565 P.2d 1315

**Trinidad RODRIGUEZ, Appellant,**

v.

**BESSER COMPANY, a Foreign Corporation, Appellee.**

**No. 1 CA–CIV 3113.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 3, 1977.
Rehearing Denied June 9, 1977.
Review Denied June 28, 1977.

**456**

Jack Levine, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P. C. by Richard J. Woods, Phoenix, for appellee.

## OPINION

NELSON, Presiding Judge.

Plaintiff, Trinidad Rodriguez, brought suit against the defendant, Besser Company, seeking to recover for personal injuries he suffered when he was injured on a piece of heavy machinery manufactured by the defendant. The case was tried to a jury on a negligence theory and the jury returned a defense verdict.[1] Plaintiff now appeals from the judgment entered in favor of the defendant and the trial court's denial of his motion for a new trial.

The principal issue on appeal is whether a manufacturer has a duty to warn of hazards created by a third party modification of its product. The other issues concern the giving of certain instructions and the exclusion of evidence. For the reasons stated below, we find no error and affirm the judgment.

In July 1967 Besser sold a cement block cubing machine[2] which it manufactured

---

1. Plaintiff elected not to submit his case on a strict liability theory. Consequently, our discussion of the issues relates only to the law of negligence. For an analogous discussion involving a strict liability theory, see *Rogers v.* *Unimac Company, Inc.,* 115 Ariz. 304, 565 P.2d 181 (No. 12842, filed April 25, 1977).

2. The following page is an illustration of the Besser cuber as originally designed by Besser Company (a reduction of exhibit 44, admitted into evidence at trial).

END VIEW OF CUBER

and designed to plaintiff's employer, Superlite Company, and installed the machine at Superlite's Tempe, Arizona plant. The cuber was designed to automatically stack cement blocks into palletized cubes to facilitate handling and storage of the blocks. The machine required an attendant to oversee its operation and to correct malfunctions and other problems, but not to physically operate the machine since its operation was automatic.

Whenever there was electric power to the machine, conveyors adjacent to the attendant's platform supplied by Besser were in motion. Other parts of the machine, including portions of the number four pattern transfer (hereinafter "PTN 4"), the mechanism involved in the accident, were in motion only when electric power was triggered by blocks being conveyed into that portion of the cuber. When electric current was flowing to the PTN 4 large "paddles," or metal bars, revolved, sweeping rows of concrete blocks onto a stripper sheet for lowering to their final storage position. Only a mechanical jam-up would prevent the paddles from moving when the PTN 4 motor was on.

As designed by Besser and delivered to Superlite, the PTN 4 was enclosed by metal on four sides and only its top, approximately nine feet above the ground, was exposed. The attendant's platform was approximately four feet above the ground and did not extend into the area of the PTN 4. A control panel was located at the end of the platform and operated as a barrier between the attendant and the PTN 4. One function of the platform and control panel was to guard the attendant from the exposed top of the PTN 4 by isolation. As originally designed, a person would not have been able to place his hand into the top of the PTN 4 while he was standing on the platform.

The purpose of the cuber attendant, in this case the plaintiff, was to stand on the platform to oversee the operation of the machine. If a block broke or became misaligned, he was to push an emergency stop button on the control panel at the end of the platform to cut off electricity to the machine. If for some reason the button malfunctioned and power was still on, the conveyors in front of the platform provided by Besser would remain in motion, giving him notice that the machine was still on.

Approximately two weeks after the cuber was installed, after it had left the possession and control of Besser, Superlite, without prior notification or consultation with Besser, installed a new platform at a higher level than the original, which extended in front of and around the side of the PTN 4. Testimony at trial indicated the reason for the new platform was to provide safer, easier access to the PTN 4. The new platform destroyed the guarding by isolation provided by the original platform and placed the attendant in close proximity to the moving paddles of the PTN 4. Besser received notice of the modification from its own representatives sometime after the new platform was installed.

At the time of his accident on April 28, 1970, some 32 months after the platform modification, plaintiff was working as the cuber attendant. The exact sequence of events leading to plaintiff's accident is unclear. However it appears that while standing on the modified platform plaintiff leaned into the top of the PTN 4 where his head was crushed against the wall of the machinery by a revolving paddle. As a result, he suffered extensive brain damage and the loss of an eye.

The first issue raised is a very narrow one. Plaintiff contends the trial court erred in refusing to permit argument and to instruct the jury that Besser had a duty to warn Superlite of the danger created by placing a man on the new platform in close proximity to the unguarded paddles of the PTN 4. This duty, plaintiff argues, arose at the time Besser was notified of the modification.

█ In connection with this argument, it is important to bear in mind that plaintiff is not arguing that the exposed portion of the PTN 4 created an unreasonable risk of danger to the cuber attendant with respect to the machine as originally delivered.

While he does argue that it was a "potential hazard" because it was unguarded, he is able to relate this hazard to the attendant only in conjunction with the installation of the higher platform by Superlite. Although plaintiff was permitted to present expert testimony that methods other than isolation were available to guard the PTN 4 paddles at the time it was designed, Besser was under no duty to produce a machine which incorporated only the ultimate in safety features. *Morrow v. Trailmobile, Inc.,* 12 Ariz.App. 578, 473 P.2d 780 (1970); *Marker v. Universal Oil Products Company,* 250 F.2d 603 (10th Cir. 1957). It is undisputed that the platform, as originally designed, functioned to guard the cuber attendant from the revolving paddles of the PTN 4 and that it was neither expected nor required that he have direct access to the PTN 4 from the original platform. Thus, we begin with the premise that the cuber as designed, manufactured and delivered did not present an unreasonable risk of harm with respect to the injury-causing apparatus and that so long as its safety features were maintained as designed, the PTN 4 paddles posed no danger to the cuber attendant while standing on the original platform.

The question then is whether Besser, as the manufacturer of a product which when sold was free from the danger which caused plaintiff's injury, was under a duty to warn of dangers created by a postmanufacture modification over which it had no control and of which it had no notice until after the modification.

■ The determination of whether a duty exists is a question of law, solely for the court. *Barnum v. Rural Fire Protection Company,* 24 Ariz.App. 233, 537 P.2d 618 (1975). With respect to a manufacturer's liability in negligence for failure to warn of product-related dangers, certain well established principles have emerged.

■ The manufacturer of a product must warn of dangers which he knows or should know are inherent in its use. *See* Restatement (Second) of Torts §§ 388, 389, 394 (1965); Annot., 76 A.L.R.2d 9, 16 (1961). *Cf. Witt Ice & Gas Co. v. Bedway,* 72 Ariz. 152, 231 P.2d 952 (1951). This duty may be a continuing one applying to dangers the manufacturer discovers after sale. Prosser, The Law of Torts 647 (4th ed. 1971); *do Canto v. Ametek, Inc.,* 328 N.E.2d 873 (Mass.1975); *Comstock v. General Motors Corporation,* 358 Mich. 163, 99 N.W.2d 627 (1959).

■ For negligence to exist there must be a reasonably foreseeable risk. *Arizona Public Service Company v. Brittain,* 107 Ariz. 278, 486 P.2d 176 (1971). If no risk of harm can reasonably be foreseen from the use of a product, negligence cannot be predicated on such use. *Lovejoy v. Minneapolis-Moline Power Implement Company,* 248 Minn. 319, 79 N.W.2d 688 (1956). When a product is safe for use as intended, a manufacturer has no duty to warn of dangers inherent in its use in an improper or unlikely manner, including unforeseen alterations or modifications of the product. Annot., 41 A.L.R.3d 1251, § 2 (1972). *See* 2 Hursch, American Law of Products Liability § 8.1 et seq. (1976). *Compare Morrow v. Trailmobile, Inc., supra.*

The cases upon which plaintiff relies in urging us to extend these rules to encompass a duty to warn of dangers after a product has left a manufacturer's control did not involve user alterations of products which made the products dangerous. Rather, they were either totally irrelevant or they involved products which were dangerous when sold and the theories discussed therein are consistent with those previously reviewed in this discussion.[3] These cases

3. *See Braniff Airways, Inc. v. Curtiss-Wright Corporation,* 411 F.2d 451 (2d Cir. 1969); *Noel v. United Aircraft Corporation,* 342 F.2d 232 (3rd Cir. 1964); *Kritser v. Beech Aircraft Corporation,* 479 F.2d 1089 (5th Cir. 1973); *Blim v. Newbury Industries, Inc.,* 443 F.2d 1126 (10th Cir. 1971); *Becker v. American Airlines, Inc.,* 200 F.Supp. 243 (S.D.N.Y.1961); *DeVito v. United Air Lines,* 98 F.Supp. 88 (E.D.N.Y.1951); *Ault v. International Harvester Company,* 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1975); *Vandermark v. Ford Motor Company,* 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964); *Alvarez v. Felker Manufacturing Com-*

are all distinguishable from the one now before us, in which a product was designed with such safety devices that no danger from the injury-causing apparatus existed so long as the machine was maintained and used in the condition in which it was sold and installed. The danger from the PTN 4 paddles arose only after Superlite installed the second platform.

■ The determination that one is or is not under a legal duty to protect another from harm, that is, that one has or does not have an obligation to conform to a legal standard in light of the risk involved, necessarily involves a multitude of policy considerations. And, when we hold that no duty exists, we mean that the burden of holding otherwise is too great.

"The duty to warn rests on foreseeability. If a chattel is sold that is free from defects in manufacture and design and is not dangerous if used as intended, the manufacturer is not liable for results caused by improper use of the chattel or changes made in its construction without the manufacturer's knowledge which makes it dangerous. Nor is there any duty to warn of nonexisting dangers, or dangers that are obvious to anyone. If the chattel is safe when sold, a manufacturer is not required to anticipate or foresee that a user will alter its condition so as to make it dangerous, or that he will continue to use it after it becomes dangerous due to alteration in safety devices intended to protect the user from harm." *Westerberg v. School District No. 792,* 276 Minn. 1, 148 N.W.2d 312, 317 (1967).

*See also Rogers v. Unimac Company, Inc.,* 115 Ariz. 304, 565 P.2d 181 (No. 12842, filed April 25, 1977).

"Unless he has reason to expect otherwise, the seller is entitled to assume that the product will be put to normal use, for the purpose for which it is intended, and in accordance with directions properly

pany, 230 Cal.App.2d 987, 41 Cal.Rptr. 514 (1964); *Bradford v. Bendix-Westinghouse Automotive Air Brake Company,* 33 Colo.App. 99, 517 P.2d 406 (1973); *do Canto v. Ametek, Inc.,* 328 N.E.2d 873 (Mass.1975); *Pippen v. Deni-*

given; and he is not liable, either for negligence or for breach of warranty, when it would ordinarily be safe, but injury results because it is mishandled, or is used in some unusual and unforeseeable way, . . ." Prosser, The Law of Torts 667–668 (3rd ed. 1964).

■■ We believe that extending a manufacturer's duty to warn to situations in which it is notified that a third party has modified its product, after the product has left its possession and control and without consultation or participation in the modification by the manufacturer, would place an intolerable burden on the manufacturer. Such a rule would in effect make a manufacturer with notice of postsale modifications of its products an insurer of the success and safety of the modified products. It would be obliged not only to discover and warn of the foreseeable dangers inherent in the products it manufactures but also of those not of its creation—the altered products of which it has notice.

The fact that a modification allegedly arises from defects in the original product should not change this result, so long as the alleged original defects themselves were neither dangerous nor a proximate cause of a plaintiff's injury. *See Swindler v. Butler Manufacturing Company,* 426 S.W.2d 78 (Mo.1968). *Cf. Texas Metal Fabricating Company v. Northern Gas Products Corporation,* 404 F.2d 921 (10th Cir. 1968). Such is not the case here.

We think the trial judge correctly instructed the jury that it could find Besser liable for injuries caused from the unguarded paddles if Superlite's modification was foreseeable at the time the cuber was manufactured and delivered without a physical guard over the top of the PTN 4. A further extension of Besser's duty would have been error.

■■ Plaintiff next objects to the giving of the following instruction:

son, Division of Abex Corporation, 66 Mich. App. 664, 239 N.W.2d 704 (1976); *Henderson v. National Drug Co.,* 343 Pa. 601, 23 A.2d 743 (1942).

"A manufacturer's duty to warn or to provide guards applies generally with respect to hazards which are unknown to the user of the product. The manufacturer has no duty to give a warning or provide a guard to protect from dangers which are open and obvious, unless the danger presented is one which an ordinary user of the product would not discover or realize, or would fail to protect himself against, or the manufacturer should expect that a person would be injured because of the condition through inadvertence or momentary forgetfulness."

Plaintiff does not contend that, in the abstract, this is an incorrect statement of the law and we express no opinion on this matter. Basically his objection is that the instruction conflicted with *his* theories of how the accident occurred. The instruction was, however, consistent with defendant's theory of the case. A party is entitled to an instruction on the law applicable to his theory of the case if that theory is reasonably supported by the evidence. *Young Candy & Tobacco Company v. Montoya,* 91 Ariz. 363, 372 P.2d 703 (1962); *Reah v. Jupin,* 68 Ariz. 335, 206 P.2d 558 (1949). This is so even though contradictory facts and theories are presented. *Reah v. Jupin, supra; Wilson v. Sereno,* 11 Ariz.App. 35, 461 P.2d 514 (1969).

In the present case defendant's theory was that plaintiff entered the PTN 4 without first turning it off. The evidence clearly supports defendant's theory that the danger, absent an electrical malfunction, of entering the PTN 4 without first turning off the electricity was glaringly obvious. The jury was also presented ample evidence from which it would have found that no electrical defect existed which could have lulled the plaintiff into thinking the electricity was off, as plaintiff suggested, and

that plaintiff merely failed to turn off the machine before he entered. The judge apparently thought the evidence was sufficient to present the question of an open and obvious danger to the jury. We agree.

■ Plaintiff next contends instruction number 5 [4] is an erroneous statement of the law and should not have been given. This instruction was approved under identical attack by the Supreme Court in *Tucker v. Collar,* 79 Ariz. 141, 285 P.2d 178 (1955) and by this Court in *Lyle v. Boyle,* 16 Ariz.App. 198, 492 P.2d 447 (1972). The instruction may not provide the most articulate definition of foreseeability, *see Arizona Public Service Company v. Brittain, supra; Tucker v. Collar, supra,* but plaintiff was able to effectively argue that defendant could reasonably anticipate a risk of harm resulting from its alleged acts of negligence. *Cf. Tucker v. Collar, supra.* We find no error in the giving of this instruction.

■ Finally plaintiff argues that the trial court erred in excluding "portions" of defendant's service records, exhibits 1–1 through 1–38. Plaintiff makes only this general reference to this series of exhibits, and in his opening brief he makes no transcript reference whatsoever to any objections or rulings regarding this evidence. In his reply brief a general reference, made almost in passing and included among other general transcript references, would ultimately lead the court to at least some of the objections, argument of counsel and court rulings concerning these exhibits.

We believe plaintiff has fallen short of his obligation to "specify with particularity and with transcript reference such rulings of the trial court as he desired to question on appeal." *Gangadean v. Byrne,* 16 Ariz. App. 112, 491 P.2d 501 (1971). While we have read the transcript in its entirety, and discovered the basis for the court's ruling in

---

**4.** "You are further instructed that the duty to exercise care arises from probabilities rather than from their possibilities of danger. In order for plaintiff to establish liability of the defendant, plaintiff must show by a preponderance of the evidence that the conduct which he claims was negligent was such that acting reasonably and prudently in the circumstances defendant should have recognized that its acts created an appreciable chance of causing the harm done rather than a bare possibility thereof, and failing therein, plaintiff should not recover in this action."

these matters, at least generally [5], and have found no abuse of discretion in this regard, we decline to discuss this question further. *See Clemens v. Clark,* 101 Ariz. 413, 420 P.2d 284 (1966); *Milam v. Milam,* 101 Ariz. 323, 419 P.2d 502 (1966); *Hubbs v. Costello,* 22 Ariz.App. 498, 528 P.2d 1257 (1974); *In re Estate of Weil,* 21 Ariz.App. 278, 518 P.2d 995 (1974).

Judgment affirmed.

HAIRE and DONOFRIO, JJ., concur.

---

5. The bulk of the trial court's rulings excluding portions of these interoffice memoranda were based on remoteness, most of them being of 1967, 1968 and 1969 vintage, and relevancy, not being related to the portion of the machine in question, or unpersuasive on the foreseeability of moving the platform so as to place the attendant in a dangerous position. There were also some memoranda regarding Besser's people showing the machine to others for promotional or sales purposes. These memos were also ruled irrelevant.