703 P.2d 556

**Jay Allan RASCHKE, Agnes Elise Raschke, and John Prendergast Raschke, Plaintiffs/Appellants,**

v.

**CARRIER CORPORATION, a corporation, Defendant/Appellee.**

**No. 2 CA-CIV 5260.**

Court of Appeals of Arizona, Division 2, Department A.

May 15, 1985.

Gentry, Desens, Behrens & Roll by Tony K. Behrens, Bisbee, for plaintiffs/appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith and Ralph E. Hunsaker, Phoenix, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

This is a products liability case in which the manufacturer of a pair of gas furnaces was sued for alleged design defects after two of the appellants suffered carbon monoxide poisoning. The trial court granted summary judgment to the manufacturer and this appeal followed. We affirm.

Appellants, Jay and Agnes Raschke, contracted with a developer in 1970 to build a house for them in Sierra Vista. Two of the items installed in the home by a subcontractor were a pair of Day and Night furnaces (manufactured by what is now a division of Carrier Corp.), one in each furnace room of the two wings of the house. The first winter after the Raschkes moved into the home Agnes complained of smelling gas. A co-defendant who was alleged to be the installer of the furnaces was called in. He extended the chimney stack on the roof and left. Thereafter the Raschkes occasionally noticed the smell of fumes, particularly on windy nights, but took no further action except to leave some windows open a crack and to use the fireplace infrequently. All maintenance on the furnaces during the ten-year ensuing period was performed by Jay Raschke. The furnace did not need repair in that ten-year period.

In November 1980 Agnes and the Raschkes' son, John, were nearly overcome by what were apparently carbon monoxide fumes that had collected in the house. A fire inspector for the city of Sierra Vista testified in his deposition that he inspected the home after the incident and found the furnace room in the main wing lacked proper fresh air inlets. He did not inspect the other room. It was discovered that the two vents in the furnace room did not lead to the outside of the house. A heating company then installed sheet metal tubing from both furnace rooms through the roof and there have been no problems since. The furnaces themselves always functioned properly.

In his deposition, Jay Raschke testified that the basis of their complaint was the failure to properly vent the furnaces to the outside and the fact that the furnaces would not shut off even though fumes had built up in the rooms. He also testified he had never seen or heard of a heater that would shut itself off in such a situation.

Raschke also stated no one had ever told him there was anything wrong with the furnaces themselves.

In connection with its summary judgment motion, Carrier filed the affidavit of a licensed mechanical engineer with 36 years' experience in heating products who stated there were not any devices in 1970 (or in 1984) which would shut down a furnace because of excess carbon monoxide fumes. The Raschkes submitted the affidavit of a licensed engineer with a degree in engineering physics and experience (amount and length of time not stated) in the design and analysis of heating systems. His opinion was that the furnaces were improperly installed, that installation instructions should have been provided by the manufacturer on the separation of circulation air and combustion air and that it was "technologically possible to provide for a carbon monoxide sensing mechanism which would serve as a warning of lethal danger in the event that the furnace was improperly installed."

■ In a products liability case, a plaintiff must "prove that the product was defective, that the defect was unreasonably dangerous, and that plaintiff's injuries were proximately caused by the defect." *Vineyard v. Empire Machinery Co.*, 119 Ariz. 502 at 505, 581 P.2d 1152 at 1155 (App.1978). The only defect in the furnaces that is contended is the lack of a sensing mechanism which would shut them off in the event there was an excess of carbon monoxide in the air. Carrier's expert's affidavit stated no furnace in either 1970 or in 1984 was available with such a device. Both Raschkes and the fire inspector stated they were not aware of any furnace on the market with such a device. The Raschkes' engineer stated only that it was technologically possible to provide for a sensing mechanism that would warn of danger; he did not state that such a device existed or how it would warn of danger. A manufacturer has no duty to make a product which incorporates only the ultimate in safety features. *Rodriguez v. Besser Co.*, 115 Ariz. 454, 565 P.2d 1315 (App.1977).

Moreover, the design defect alleged is a safety design defect that would become operative only in the event of an unusual situation. There was no evidence on the frequency of improper installation of furnaces nor on the frequency of occasions in which carbon monoxide fumes reach an excessive level which could support the contention that failure to include a sensing mechanism rendered the furnaces unreasonably dangerous products. See *Vineyard v. Empire Machinery Co.*, supra.

■ The Raschkes' other contention against Carrier is that it failed to give adequate warning of the likelihood of danger if the furnaces were not properly installed although the complaint filed in the suit makes no mention of a failure to warn. On appeal that issue has been expanded to include failure to provide adequate instructions on installation to its dealers, failure to make certain its dealers were adequately trained to install the products properly and failure to warn by a label on the furnace that if the customer "sensed anything unusual about the operation of the furnace" he or she should immediately call a service representative. Since those issues were not raised in the trial court they cannot now be asserted in the appeal from summary judgment. *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984). We note, however, that even if we were to consider those issues, we would still find that the Raschkes presented no evidence to support those allegations.

■ With regard to the contention that Carrier failed to warn of the likelihood of danger from improper installation, a manufacturer has a duty to warn if, without the warning, the product would be "in a defective condition unreasonably dangerous to the user or consumer...." Restatement (Second) of Torts § 402A (1965); *Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271 (App.1978). The evidence was that the furnaces themselves operated properly; there was no indication they were unreasonably dangerous without the warning. Instead, the evidence showed the

**12**

only problem was the improper installation in failing to provide for fresh air.

 Additionally, the failure to warn was not the proximate cause of the incident. The Raschkes testified they immediately called the gas company and then a service man the first time they smelled fumes. That is all a warning label on the furnaces would have accomplished. They continued to smell fumes intermittently throughout the next ten years but did not have the problem re-evaluated. The evidence showed no proximate cause other than the initial improper installation. See *Rogers v. Unimac Co., Inc.*, 115 Ariz. 304, 565 P.2d 181 (1977).

The Raschkes' expert stated Carrier should have provided instructions on the proper installation of the furnaces. The Raschkes testified they had nothing to do with the furnace installation but merely moved into the house once it was completed. Thus, installation instructions would have been meaningless to them. No evidence was presented on whether or not installation instructions had been provided. Since, at the time summary judgment was granted, it still had not been conclusively determined exactly who had installed the furnaces, we cannot rule on this issue.

 Carrier's position in this case is similar to that of Coleman Cable in *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (App.1983). Summary judgment there was affirmed for the manufacturer of an extension cord that had been cut and repaired with tape. The court remarked that every adult must know that such a condition can result in electrical shock. Because the danger was so obvious, the court found there was no duty to warn. Although a gas furnace is a more complicated product than an extension cord, surely every adult knows that adequate ventilation is necessary for its proper operation.

 A review of a summary judgment motion requires us to view the facts most favorably to the party against whom judgment was taken. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 639 P.2d 330 (1982). A review of the facts in this case indicates there is no genuine issue as to any material fact and that Carrier was properly entitled to summary judgment. Appellants have not met the requirements of Rule 56(e), Rules of Civil Procedure, 16 A.R.S., having failed to set forth specific facts showing that there is a genuine issue for trial.

Affirmed.

BIRDSALL, P.J., and HOWARD, J., concur.