548 A.2d 1276

**Clare LYNCH, Appellant,**

v.

**McSTOME AND LINCOLN PLAZA ASSOCIATES and Montgomery Elevator Company and General Elevator Company.**

Superior Court of Pennsylvania.

Argued April 6, 1988.

Filed Oct. 13, 1988.

Gerry Woods, Philadelphia, for appellant.

Fred J. Silverman, Willow Grove, for McStome, appellee.

William V. Coleman, Philadelphia, for Montgomery, appellee.

Arthur R. Tilson, Ambler, for General, appellee.

Before WIEAND, HOFFMAN and BECK, JJ.

BECK, Judge:

Plaintiff-appellant, Clare Lynch, sued McStome and Lincoln Plaza Associates, Montgomery Elevator Company and General Elevator Company, Inc. on negligence grounds for injuries she received at Oxford Valley Mall when the escalator upon which she was riding allegedly came to a sudden and abrupt stop. Plaintiff did not assert a strict liability claim against any of the defendants.

The escalator was manufactured by Montgomery Elevator Company (hereinafter "Montgomery") in 1973. In that same year, the escalator was purchased by McStome and Lincoln Plaza Associates (hereinafter "the Mall") and installed at the Oxford Valley Mall owned by them. The escalator has been maintained by General Elevator Compa-

ny (hereinafter "General"), since the date of installation. The incident in question occurred on June 26, 1982.

On August 6, 1986, a jury returned a verdict in favor of the defendants. The jury found that Montgomery was not negligent and that the Mall and General were negligent but their negligence was not a substantial factor in bringing about the plaintiff's harm.

On August 15, 1986, appellant filed timely post-trial motions seeking a new trial. Thereafter, in March 1987, appellant sought leave to file additional reasons in support of her post-trial motions pursuant to Montgomery County Local Rule 252. By order dated July 27, 1987, the trial court denied appellant's August 15, 1986 post-trial motions and denied appellant leave to file additional reasons in support thereof. Judgment was entered on the jury's verdict on August 7, 1987.

Appellant filed two appeals. The first, appeal No. 2409 Phl. 1987, is from the judgment entered against appellant on August 7, 1987. The second, appeal No. 2410 Phl. 1987, is from the trial court's July 27, 1987 order denying appellant leave to file additional reasons in support of her post-trial motions.[1]

In these appeals, appellant raises the following issues:

1. Did the trial court err in refusing to admit evidence of:

    (a) the submission to Montgomery, after manufacture of the subject escalator and before appellant's accident, of reports of accidents allegedly involving abrupt stopping by other escalators; and

---

1. Although appellant has filed two separate appeals, in actuality both appeals are properly construed as appeals from the August 7, 1987 judgment against appellant. Although appeal no. 2410 purports to be from the trial court's July 27, 1987 order denying appellant leave to file additional reasons in support of its post-trial motions, this order was interlocutory and non-appealable until it was reduced to judgment on August 7, 1987. Thus, appeal no. 2410 properly relates to that judgment, as does appeal no. 2409, and we will therefore deal with this matter as a single consolidated appeal from the August 7, 1987 judgment.

(b) Montgomery's failure, after manufacture of the subject escalator and before appellant's accident, to conduct or consult safety studies regarding the escalator.

(c) any other evidence of negligent conduct by Montgomery after manufacture of the escalator and before appellant's accident.

2. Did the trial court err in admitting into evidence videotapes produced by Montgomery?

3. Did the trial court err in refusing appellant's proposed point for charge on the doctrine of res ipsa loquitur as to the Mall and General?

4. Did the trial court err in charging the jury on the issue of the negligence of appellant?

5. Did the trial court err in charging the jury that it could draw an adverse inference if it determined that appellant's expert witness, Lester Moskowitz, did not satisfactorily explain his failure to produce a videotape of the escalator stopping that he allegedly had made?

6. Did the trial court err in denying appellant's motion to file additional reasons in support of her motion for a new trial under Montgomery County Local Rule 252?

As to issues two through five, we have reviewed the record, briefs and arguments of counsel, and find no ground for the grant of a new trial. As to issue number six, we agree with the trial court's analysis and application of Montgomery County Local Rule 252 to the instant case. Thus, as to all of these issues, we affirm on the basis of the excellent trial court opinion, authored by Judge Yohn of the Montgomery County Court of Common Pleas.

Issue number one, however, raises interesting questions not previously addressed in Pennsylvania law which merit further analysis.[2] As the issue is phrased in appellant's brief, appellant seeks a new trial on the ground that the trial court erred in refusing to admit against Montgomery

2. We note that Judge Yohn's opinion on this issue is equally thorough and, in our view, correct. We write separately because of the novelty and importance of the question presented.

certain evidence concerning the period after the manufacture and sale of the escalator in 1973 and before appellant's accident in 1982. The specific evidence in question, as described at trial and in appellant's brief, was:

(a) a portion of a computer printout that was produced by Montgomery and that listed reports to Montgomery of escalators that had stopped abruptly in the period after manufacture and before the instant accident. The reports provide no information as to why the escalator had stopped and do not indicate who was the manufacturer of the escalator involved. None of the reports concerned the escalator involved in this case.

(b) Evidence that Montgomery failed to perform or consult safety studies concerning the escalator after the date of manufacture.

(c) Evidence that it was possible to retrofit the escalator involved in this case with a new braking system, the "DC shoe brake", that would allegedly have allowed for a longer stopping distance.

It is unclear precisely how appellant wished to use this evidence at trial. That is, what did appellant wish to prove via the introduction of this evidence? The argument contained in appellant's brief is not enlightening, but in oral argument at trial, appellant's counsel described his theory as follows:

The fact of the matter is, is there a duty? Okay. What the duty is, the duty is to provide a reasonably safe escalator here. Okay? If in fact they use one brake system which is unsafe and then before the accident takes place commence to use another brake which affords a longer stopping distance, we're contending that it's a breach of their duty to passengers riding on escalators not to go back and notify customers, at least notify them that, that they could have a longer stopping distance on the brakes they manufacture all before the accidents take place.

. . . .

My factual proof, Your Honor, is it was unsafe from the very beginning in 1973, continued to be unsafe until the date of the accident which again is the relevant date here, and then prior to the date of the accident, three years in fact prior to the date of the accident, ... Montgomery Elevator Company, ceased using a dings brake [the brake on the subject escalator] and used a brake that had a longer braking distance, the DC shoe brake.

We're saying based upon that, based upon their knowledge that this is a shorter stopping distance brake, that in fact there were two other brakes that Montgomery had used prior to the date of the accident, they had a duty to warn, at least warn users of that escalator that in fact the brake could be retrofitted.

At a later point in the trial, counsel for appellant further addressed this theory. Counsel stated that Montgomery should be classified as a common carrier who owed the highest duty of care to plaintiff and that a post-manufacture and sale duty to retrofit or warn was part of this enhanced duty of care. Counsel also conceded, however, that if Montgomery were not considered a common carrier, its duty would "more or less cut off at either the time of manufacture or sale." (N.T. July 30, 1986, at 61).

We shall consider the three categories of evidence in question seriatim.

The first item of evidence is the computer printout of reports of abrupt stopping by various escalators after the subject escalator was manufactured. We conclude, as did the trial court, that the printout was inadmissible because it was totally lacking in probative value on the issue of Montgomery's exercise of due care, whether we measure Montgomery's conduct as of the time of manufacture and sale or as of the time of appellant's accident. As such, the evidence was not relevant. As our Supreme Court has recently stated:

Evidence is relevant if it tends to make the fact at issue more or less probable. Evidence is relevant if it in some degree is probative and advances the inquiry.

*Commonwealth v. Gonzalez*, 519 Pa. 116, 546 A.2d 26, 34 (1988) (citing *Gregg v. Fisher*, 377 Pa. 445, 105 A.2d 105 (1954); *Bowers v. Garfield*, 382 F.Supp. 503 (E.D.Pa.1974)).

■ Evidence concerning other incidents involving the instrumentality that allegedly caused plaintiff's harm may be relevant to a number of issues. It may tend to show that the instrumentality was in fact unsafe or could cause the type of harm experienced by plaintiff or it may be admissible to show that the defendant had actual or constructive notice of a condition that may cause such harm. However, such evidence is only admissible when the evidence concerns incidents sufficiently similar to the incident involving the plaintiff which occurred under sufficiently similar circumstances. *Whitman v. Riddell*, 324 Pa.Super. 177, 471 A.2d 521 (1984); *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976). A wide degree of latitude in the determination of whether such evidence should be admitted is vested in the trial court. *Id.*

In the instant case, the computer printout is no more than a several page list containing multiple entries. Each entry consists of a name, presumably of the person who experienced the reported escalator incident, a date, a code and case number, and a phrase like "escalator stopped abrupt" or "knocked down escalator". There is no explanation of the significance of the code and case numbers, no indication if the escalator involved was even one that Montgomery had manufactured, and no explanation of the circumstances of or causes for the reported incidents. Moreover, at trial, counsel for appellant indicated that he had no witness who would supply such additional information.

■ Clearly the trial court did not abuse its discretion in excluding this evidence. This printout would have provided no useful information to the jury in assessing Montgomery's conduct in manufacturing the escalator. Nor would the printout have provided any information from which the

jury could reasonably have concluded that Montgomery was on notice after the sale of this escalator that the escalator was in some way malfunctioning or unsafe, thus giving rise to a post-sale duty to warn or retrofit. The reports simply do not provide sufficient information to allow a jury reasonably to consider them probative of the condition of this escalator or of what Montgomery knew of the condition of the escalator after it was sold. The only possible impact of the printout would be to prejudice the jury by impressing upon them that escalators do occasionally stop and that people do occasionally fall on escalators. The evidence was properly excluded.

We now turn to a consideration of the final two categories of evidence that appellant claims was improperly excluded. These categories basically comprise evidence that after the date of manufacture of this escalator and before appellant's accident, there was a new DC shoe brake system affording a longer stopping distance available for installation on escalators, that Montgomery in fact used this system on some of the escalators it manufactured before appellant's accident, and evidence of the efforts or lack thereof that Montgomery made to assess the safety of its escalators.

▮ The trial court rejected the subject evidence in support of a post-manufacture duty to retrofit on two grounds, both of which are correct. First, as we have noted above, the trial court correctly concluded that appellant had largely hinged this argument on the assertion that Montgomery is a common carrier. The trial court then correctly concluded that Montgomery is not a common carrier. A common carrier is "one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally." *Kelly v. General Electric Co.*, 110 F.Supp. 4, 6 (E.D.Pa.), *aff'd*, 204 F.2d 692 (3d Cir.), *cert. denied*, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953); *see also Merchants Parcel Delivery v. Pennsylvania Public Utility Commission*, 150 Pa.Super. 120, 28 A.2d

340 (1942). The law is well settled in Pennsylvania that only owners/operators of common carriers are held to the highest degree of care. *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 238, 420 A.2d 514, 519 (1980); *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 606–07, 327 A.2d 94, 97 (1974). As Chief Justice Jones stated in his concurrence in *Gilbert:*

> At no time ..., to my knowledge, held that the conduct of a manufacturer ... of an instrumentality which is a common carrier is governed by the standard of the highest degree of care.

*Gilbert*, 457 Pa. at 622, 327 A.2d at 105 (Jones, C.J., concurring).

Thus Montgomery, as manufacturer of the escalator, is not governed by the standard of the highest degree of care but only by the ordinary standard of reasonable care.

Although we could end our analysis at this point by construing appellant's argument to be totally dependent on Montgomery's alleged status as a common carrier, in fairness to appellant we will construe her argument regarding a duty to retrofit broadly. We will proceed to analyze whether such a duty exists even assuming that Montgomery is held only to a standard of ordinary reasonable care under the circumstances. The question then becomes whether the exercise of reasonable care includes a post-sale warning or retrofit under the circumstances of this case. In other words, if the subject evidence had been admitted against Montgomery, could it have established that Montgomery was liable in negligence for failing to notify the Mall that a new escalator braking system allowing for a longer stopping distance had been discovered and/or for failing to put this new system on the subject escalator. We think not.

It is important to note that in this case, the precise question is not whether a manufacturer has a duty in negligence to warn existing owners of the manufacturer's products when the manufacturer later discovers that his product poses a clear threat to the safety of users thereof,

although the manufacturer was unaware that the product was unsafe when it was sold. Nor is this a case involving a product which, although state of the art, is inherently dangerous when sold and as to which there is a later technological breakthrough and a safe design is then discovered. We do not opine on the duties of a manufacturer in such cases. We also do not intimate any opinion concerning a manufacturer's duties in strict liability, since appellant did not assert a strict liability cause of action against Montgomery.

In this case, appellant only sought to show that after the subject escalator had been manufactured and sold, a new brake system was discovered and used by Montgomery itself on its later produced escalators. Appellant did not offer evidence as to why Montgomery began using the alternative brake design. Appellant also attempted to demonstrate that the new system was safer in that it allegedly allowed for a longer stopping distance, i.e. would have reduced abrupt stops like the one that allegedly caused appellant's accident. Finally, it would appear that appellant sought to show that Montgomery failed to "follow up" on the safety of the escalator by consulting or performing safety studies. Presumably appellant was attempting to convince the jury that even if Montgomery did not actually know of the relative safety of the subject escalator and escalators with the newly designed brake system, then Montgomery should have known.

We have already established that the evidence of alleged abrupt stopping incidents by escalators that appellant attempted to introduce, presumably to show that the escalator in this case was unsafe and that Montgomery had notice of this fact, was clearly inadmissible. Moreover, appellant did not produce any other evidence indicating that Montgomery knew or should have known, prior to appellant's accident, that this escalator or similarly designed escalators were malfunctioning or unsafe. Finally, the jury found, based on ample evidence of record, that Montgomery *had* exercised due care in the manufacture of this escalator. In fact, the

jury reached this conclusion despite the trial court's admission of evidence that *before* Montgomery manufactured the instant escalator, Montgomery had manufactured escalators with a different brake system that afforded a longer stopping distance and despite the fact that Montgomery admitted to the feasibility of making escalators with longer stopping distances and admitted that escalators do sometimes stop and people do occasionally fall as a result.

■ Given the posture of this case, therefore, the precise question presented for decision is this—in a negligence product liability case, where the defendant manufacturer exercises reasonable care in producing a product which functions properly until the time of the accident in question and does not retain any post-sale responsibility for or control over its product, but where it is proven that at the time of the accident the manufacturer knew or should have known of an alternative design, which may be safer, is the manufacturer negligent if it does not retrofit its already sold products, or at least notify the owners of the product of the new design?

We are unaware of any Pennsylvania precedent that imposes such a broad duty on a manufacturer, nor do we think that the imposition of such a duty would be appropriate under established principles of negligence liability. As the Appellate Division of New Jersey aptly stated in the context of a highly similar case:

> There is no duty upon the seller of a machine faultlessly designed and manufactured, such as this ..., to notify its customers after the time of sale of changes in the state of the art concerning the safe operation of such machine and advise them to install any new, updated or improved safeguards developed since the time of sale. Whether this claim, essentially one of failure to warn, is viewed as sounding in negligence, ... or strict liability, ... makes no difference.

. . . .

3. We recognize that there are products liability cases from other jurisdictions which speak of a manufacturer's

or seller's "continuing duty to warn." ... Our review of
these cases leads us to conclude that this phrase has been
used most often to describe no more than the obligation
imposed where a manufacturer or seller, believing that it
has sold a non-defective product, subsequently learns that
its product was, in fact, defective when placed in the
stream of commerce. In these circumstances, saying that
there is a "continuing duty to warn" is, of course, a tacit
recognition that the duty existed in the first instance.
Such an obligation is not at all synonymous, however,
with the claim—made here by plaintiff—that where a
product is free from all defects when sold, the seller,
nevertheless, has a duty to monitor changes in technology
and notions of safety and, either periodically or other-
wise, notify its purchasers thereof. For where, as here,
no initial duty to warn exists, none can be said to "contin-
ue".

*Jackson v. New Jersey Manufacturers Insur. Co.,* 166
N.J.Super. 448, 400 A.2d 81 at 89–90 and n. 3 (1979). *See
also Smith v. Firestone Tire and Rubber Company,* 755
F.2d 129 (8th Cir.1985); *Syrie v. Knoll International,* 748
F.2d 304 (5th Cir.1984). *Cf. Kozlowski v. John E. Smith's
Sons Co.,* 87 Wis.2d 882, 275 N.W.2d 915 (1979).

The clear effect of imposing such a duty would be to
inhibit manufacturers from developing improved designs
that in any way affect the safety of their products, since
the manufacturer would then be subject to the onerous, and
oftentimes impossible, duty of notifying each owner of the
previously sold product that the new design is available for
installation, despite the fact that the already sold products
are, to the manufacturer's knowledge, safe and functioning
properly.

Moreover, in a case such as this, where at the time of the
accident and for nine years prior thereto, the product in
question was under the control of the Mall, and its service
company, General, it is clearly more appropriate to impose a
duty to insure that the product is functioning properly or to
update the design of the product in the light of new

technology on those parties, rather than on the manufacturer who relinquished control years ago.

Thus, we conclude that the trial court did not err in refusing to admit the subject evidence. Under the circumstances of this case, admission of the subject evidence could not have established that Montgomery breached any legally cognizable duty to plaintiff.

The judgment is affirmed.