972 P.2d 235

**Glenn WILSON, a married man,
Plaintiff/Appellant,**

**v.**

**UNITED STATES ELEVATOR CORPORATION, a foreign corporation authorized to do business in Arizona, Defendant/Appellee.**

No. 2 CA–CV 97–0003.

Court of Appeals of Arizona,
Division 2, Department B.

May 28, 1998.

As Corrected June 1, 1998.

Review Denied Dec. 7, 1998.

252

Gabroy, Rollman & Bosse, P.C. by John Gabroy and Richard Brown, for Plaintiff/Appellant.

Hazlett & Wilkes by Carl E. Hazlett and Thomas M. Bayham, for Defendant/Appellee.

ESPINOSA, J.

¶1 After Glenn Wilson's wrist was caught in the doors of an elevator, he sued the manufacturer, appellee United States Elevator Corporation, for injuries. The trial court granted appellee's motion for summary judgment, finding as a matter of law that it had no continuing duty to notify the owner of the elevator that an improved door closing mechanism had become available years after the elevator had been purchased and installed. On appeal, Wilson asserts error, contending: (1) appellee had a continuing, post-sale duty to notify known purchasers of safety improvements of which it subsequently learned; (2) triable factual disputes exist as to whether the elevator was unreasonably dangerous, breach of duty, and proximate cause; and (3) compliance with safety code requirements does not negate his tort claim. We affirm.

### Background

¶2 We view the facts and all reasonable inferences therefrom in the light most favorable to the party that opposed summary

judgment. *Kiley v. Jennings, Strouss & Salmon,* 187 Ariz. 136, 927 P.2d 796 (App. 1996). In June 1993, Wilson, a United States Secret Service Special Agent working in a Tucson federal office building, saw a woman and her young child waiting for the elevator. When it arrived, the child stepped in, but before the mother could also enter, the elevator doors began to close. Wilson lunged and inserted his right hand and wrist into the elevator door opening in an attempt to re-open the doors. The elevator doors did not reopen but closed on Wilson's hand and wrist. As the elevator started to move, Wilson used his left hand to forcibly ·pull the doors open and extracted his right hand, at which time the elevator doors closed and then reopened. Wilson suffered permanent injuries to his wrist and hand and brought an action against appellee and the elevator maintenance company, Hotchkiss Elevator Company,[1] asserting theories of strict liability against appellee and negligence against Hotchkiss.

¶ 3 The elevator involved had been manufactured by appellee and installed in January 1974. Although it had been serviced and maintained by appellee following its installation, the service contract was awarded to another company in 1987 and then to Hotchkiss, which had serviced the elevator at least once a week before and after the time of Wilson's accident. The elevator incorporated a "dual beam photo-eye" and "standard safety-edge" system which utilized rubber "bumpers" along the closing edges of each door to automatically retract the doors if they came in contact with any person or object. After the accident, Hotchkiss installed in the elevator a newer "shield sensor" device, which uses multiple light beams to retract the doors and offers greater protection than the photo-eye and safety-edge system. Appellee did not manufacture or sell shield sensors, although it was aware of their development sometime before 1989.

¶ 4 In granting appellee's motion for summary judgment, the trial court found that "a number of years after its maintenance contract and monthly contacts with the user had ceased, [appellee] had no duty to

contact the user and advise the user that there was a 'safer,' 'better,' or improved version of the door closing mechanism." This appeal followed.

## Discussion

¶ 5 Summary judgment is proper if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that a reasonable jury could not agree with the conclusion advanced by the proponent. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). The standard of review for a grant of summary judgment is *de novo. Dole Food Co. v. North Carolina Foam Indus.,* 188 Ariz. 298, 935 P.2d 876 (App.1996). The determinative issue presented here is a matter of first impression in Arizona: whether a manufacturer has a continuing duty to notify each owner of a previously sold product of improved safety designs, even though the product was not defective when sold and the manufacturer no longer services or maintains it. The question of duty is a threshold issue that is usually decided by the trial court as a matter of law, subject to our *de novo* review. *Knauss v. DND Neffson Co.,* 192 Ariz. 192, 963 P.2d 271 (1997).

¶ 6 Ordinarily, to establish a case of strict liability, the plaintiff must show that the product is defective and unreasonably dangerous, the defective condition existed at the time the product left the defendant's control, and the defective condition is a proximate cause of the plaintiff's injuries. *Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 737 P.2d 376 (1987); *Dole Food; Raschke v. Carrier Corp.,* 146 Ariz. 9, 703 P.2d 556 (App.1985). In addition, strict liability as well as negligence standards " 'impose a duty to produce products with appropriate warning instructions.' " *Dole Food,* 188 Ariz. at 301, 935 P.2d at 879, *quoting Anguiano v. E.I. DuPont de Nemours & Co.,* 808 F.Supp. 719, 722 (D.Ariz.1992), *aff'd,* 44 F.3d 806 (9th Cir.1995). "A product faultlessly made may be deemed 'defective' if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning." *Piper*

---

1. Wilson's claims against Hotchkiss are not at    issue here.

*v. Bear Med. Sys.*, 180 Ariz. 170, 177, 883 P.2d 407, 414 (App.1993). The duty to warn arises when the product is perfectly manufactured but is unreasonably dangerous without an appropriate warning of its dangerous characteristics. *Maake v. Ross Operating Valve Co.*, 149 Ariz. 244, 717 P.2d 923 (App. 1985); *see also Raschke*, 146 Ariz. at 11, 703 P.2d at 558, *quoting* Restatement (Second) of Torts § 402A (1965) (under strict liability theory, the duty to warn arises if, "without the warning, the product would be 'in a defective condition unreasonably dangerous to the user or consumer' ").

¶ 7 Wilson does not allege any flaw in the elevator's design or manufacture or any informational defect at the time of its sale and installation. He contends, however, that appellee had a continuing duty to inform past customers of the availability of the new safety device once it learned of it, citing *Readenour v. Marion Power Shovel, Inc.*, 149 Ariz. 442, 719 P.2d 1058 (1986),[2] and *Rodriguez v. Besser Co.*, 115 Ariz. 454, 565 P.2d 1315 (App.1977). In *Rodriguez*, Division One of this court noted that a manufacturer may have a continuing duty to warn about dangers discovered after the sale, but found no duty to warn of potential dangers from independent post-sale modifications made by a third party after the product had left the manufacturer's possession and control. *Rodriguez* provides little support for Wilson's position because the "continuing duty" referred to there requires the manufacturer's post-sale discovery of a danger "inherent in [the product's] use." *Id.* at 459, 565 P.2d at 1320. In discussing this duty, the court cited *doCanto v. Ametek, Inc.*, 367 Mass. 776, 328 N.E.2d 873, 878 (1975), which upheld imposition of a post-sale duty to warn of a latent design defect "to eliminate the risk created by the manufacturer's initial fault." Furthermore, the court noted, contrary to Wilson's theory here, that the fact that other safety methods were available imposed no duty on the manufacturer to "pro-

duce a machine which incorporated only the ultimate in safety features." *Id.*

¶ 8 Nowhere in his pleadings or response to appellee's motion for summary judgment has Wilson identified any "fault" in the elevator's design or manufacture, or deficiency in the manufacturer's instructions. Nor did he present any evidence that after the elevator's sale, appellee had or should have discovered any "inherent danger" in its use. Thus, Wilson's assertion that our supreme court expressly approved the continuing duty principle of *Rodriguez* in *Readenour* has little impact here. Moreover, in *Readenour*, the court's only mention of that principle is the following statement:

> In a case in which the total number of [power shovels] made and sold was so small [120 worldwide], it is certainly permissible for the plaintiffs to argue that if the manufacturer discovered an unreasonably dangerous condition at any time during the product's history it was feasible that it should either retrofit each of the models already sold or warn each of the buyers of the existence of the latent danger.

149 Ariz. at 448, 719 P.2d at 1064. It should be noted that this discussion is in the context of an altogether different issue: the admissibility of evidence of the manufacturer's post-sale design changes and warnings, and the court was commenting on the plaintiff's use of such evidence pursuant to a jury instruction, quoted in the Court of Appeals' decision, that stated in pertinent part:

> The duty to warn, where applicable, is a continuing one applying to dangers the manufacturer discovers after sale *if such dangers existed at the time of sale.*

*Readenour v. Marion Power Shovel, Inc.*, 149 Ariz. 454, 460, 719 P.2d 1070, 1076 (App. 1985) (emphasis added). Thus, *Readenour* does not stand for the broad proposition at issue here. Furthermore, although Wilson attempted to introduce an expert's opinion that, without the new safety device, the elevator was "unreasonably dangerous,"[3] he in-

**2.** We note Wilson's specific citations are to the court of appeals' opinion in *Readenour*. The supreme court subsequently modified the court of appeals decision and remanded with no men-

tion of *Rodriguez*, contrary to Wilson's assertions in his briefs, or the precise theory at issue here.

**3.** This affidavit testimony was stricken by the trial court as conflicting with the expert's earlier

troduced no evidence that appellee had discovered any "latent danger" in the elevator it had sold, had made any post-sale design changes, or had sold only a small number of elevators since 1974. Indeed, Wilson's expert attributed the accident to "improper adjustment of the safe edges" rather than to any defective condition or lack of warning.

¶ 9 Wilson additionally cites *Dole Food* in support of his position. That case is inapposite, however, because it did not address the existence of a continuing duty to notify, but only the adequacy and reach of warnings the manufacturer already had a duty to provide. Wilson also relies heavily on *Dixon v. Jacobsen Manufacturing Co.*, 270 N.J.Super. 569, 637 A.2d 915 (App.Div.1994), in which a New Jersey appellate court construed two of its state products liability statutes to impose on the manufacturer of a snowblower a duty to notify users of subsequent safety improvements when the manufacturer knew the identity of the product owners. We find *Dixon* inapplicable here for several reasons. First, Arizona has no similar legislation related to a manufacturer's duty to warn. Second, unlike the situation here, the duty to warn in *Dixon* was factually predicated on the manufacturer's awareness of the danger and its updated product design and safety warnings. Third, the plaintiff in *Dixon* alleged that the manufacturer's original warnings were inadequate and that it was aware those warnings were insufficient to alert the user to the hidden danger in its snowblower, allegations that Wilson does not make. Finally, the *Dixon* court expressly declined "to decide the outer limits of a manufacturer's duty to inform consumers generally of updated warnings or design changes" outside the context of that case, a context, we note, in which the owner had expressly requested and received information about his outdated snowblower directly from the manufacturer, which did not warn of, or even mention, the known danger. 637 A.2d at 923.

¶ 10 Wilson cites several other cases from across the country, but they are likewise distinguishable. In *Patton v. Hutchinson*

*Wil–Rich Manufacturing Co.*, 253 Kan. 741, 861 P.2d 1299 (1993), the Kansas Supreme Court listed multiple factors to consider in determining whether a post-sale warning should be required, emphasizing the necessity of analysis on a case-by-case basis. But, the court stated: "We recognize a manufacturer's post-sale duty to warn ultimate consumers ... *when a defect, which originated at the time the product was manufactured* and was unforeseeable at the point of sale, is discovered to present a life threatening hazard." *Id.* 861 P.2d at 1313 (emphasis added). The Wisconsin Supreme Court followed a similar approach in *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis.2d 882, 275 N.W.2d 915 (1979), considering not only whether the manufacturer can easily identify the owner but additional factors, such as the nature of the industry, warnings already given, intended life of the product, safety improvements, number of units sold, and consumer expectations. Like *Dixon*, however, *Kozlowski* is distinguishable from this case because the plaintiff there alleged that the product was defectively designed and lacked sufficient warnings *at the time of sale* and that the manufacturer had breached its duty to warn of the latent defect upon learning of it. *See also Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311 (7th Cir.1983) (allegation of failure to provide adequate warnings about "hidden defect" discovered by manufacturer after sale).

¶ 11 Other jurisdictions have declined to impose a continuing duty to warn, expressly holding that such a duty arises only when a manufacturer, believing it has sold a nondefective product, subsequently learns that its product was, in fact, defective when placed in the stream of commerce. *See Romero v. International Harvester Co.*, 979 F.2d 1444 (10th Cir.1992) (applying Colorado law); *Lynch v. McStome & Lincoln Plaza Assoc.*, 378 Pa.Super. 430, 548 A.2d 1276 (1988). This view is supported by the Restatement (Second) of Torts, which, absent any contrary precedent, Arizona courts gen-

---

deposition and appears not to have been considered. Even assuming it could be said Wilson timely raised this issue for the first time in his reply brief, we need not address it because the

testimony would not affect our analysis, the opinion on dangerousness being predicated solely on the existence of the new safety device.

erally follow. *See Dole Food.* Restatement § 402A, comment (g) states: "The rule [of strict liability] stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *See also* 1 M. Stuart Madden, *Products Liability* § 10.13 (2d ed. 1988) (continuing duty to warn exists only if product was defective when initially placed into stream of commerce). Thus, "before there can be any continuing duty—whether it be to warn, repair, or recall—there must be a defect or an actionable problem at the point of manufacture." *Gregory v. Cincinnati, Inc.,* 450 Mich. 1, 538 N.W.2d 325, 328 (1995); *see also Reeves v. Cincinnati, Inc.,* 208 Mich.App. 556, 528 N.W.2d 787 (1995) (manufacturer who produces products without defects, latent or otherwise, not required to provide notices to owner of updated features); Madden, *supra,* § 10.13 at 454. This is so regardless of whether the claim is predicated on a negligence or strict liability theory. *See Jackson v. New Jersey Mfrs. Ins. Co.,* 166 N.J.Super. 448, 400 A.2d 81 (1979), *overruled on other grounds, Seeley v. Cincinnati Shaper Co.,* 256 N.J.Super. 1, 606 A.2d 378 (1992); *see also* 2 Frumer and Friedman, *Products Liability* § 12.02[1] (1998) (regardless of underlying theory, warning claims brought under either negligence or strict liability are essentially the same and measured by same standards).

¶ 12 We find *Lynch* particularly persuasive. There, the plaintiff had brought a negligence action against the manufacturer of an escalator for injuries received when the escalator came to an abrupt halt, claiming that company had a duty to notify its past customers of a newer, allegedly safer, braking system. The Pennsylvania appellate court found no precedent for such a broad duty, nor could it find it appropriate under standard negligence principles.

"We recognize that there are products liability cases from other jurisdictions which speak of a manufacturer's or seller's 'continuing duty to warn.'... Our review of these cases leads us to conclude that this phrase has been used most often to describe no more than the obligation imposed where a manufacturer or seller, believing that it has sold a non-defective product, *subsequently learns that its product was, in fact, defective when placed in the stream of commerce.* In these circumstances, saying that there is a 'continuing duty to warn' is, of course, a tacit recognition that the duty existed in the first instance. Such an obligation is not at all synonymous, however, with the claim—made here by plaintiff—that where a product is free from all defects when sold, the seller, nevertheless, has a duty to monitor changes in technology and notions of safety and, either periodically or otherwise, notify its purchasers thereof. For where, as here, no initial duty to warn exists, none can be said to 'continue.'"

378 Pa.Super. 430, 548 A.2d at 1281, *quoting Jackson,* 400 A.2d at 90 n. 3 (emphasis added). The later Pennsylvania decision of *Walton v. Avco Corp.,* 530 Pa. 568, 610 A.2d 454 (1992), cited by Wilson, is inapposite because, in that case, a helicopter manufacturer had incorporated an already defective engine into its helicopter, thereby rendering the engine and helicopter unreasonably dangerous at the time it was sold.

¶ 13 On the facts at hand, we think the *Lynch* approach is sound. The elevator here was installed by appellee in 1974. Wilson does not dispute that the door opening system furnished then was the accepted and relied-upon safety standard in the elevator industry at that time. Although Wilson presented evidence that the newer shield sensor system is superior and that its use has gained general acceptance, it is also undisputed that both safety mechanisms perform the same job—reopening elevator doors—and that the older system is far from obsolete; in fact, on this record it is still the standard required by the national elevator code. Furthermore, appellee neither manufactured nor sold the newer device and it was not even available when the subject elevator was manufactured and installed. Indeed, appellant's expert testified that the shield sensor system did not come into widespread use until "'88 [or] '89." Additionally, appellee had not serviced the elevator or had any other responsibility for it since 1987, more

than five years before Wilson's accident. Accordingly, we cannot agree, in effect, that the mere subsequent development and production of an alleged superior safety device rendered the elevator installed in 1974 unreasonably dangerous and imposed a duty upon appellee to issue warnings to all past purchasers of its elevators. As the court in *Lynch* observed, this is not a case where

> the manufacturer later discovers that his product poses a clear threat to the safety of users thereof, although the manufacturer was unaware that the product was unsafe when it was sold. Nor is this a case involving a product which, although state of the art, is inherently dangerous when sold and as to which there is a later technological breakthrough and a safe design is then discovered.

> \*    \*    \*    \*    \*    \*

> The clear effect of imposing a [continuing] duty [under these circumstances] would be to inhibit manufacturers from developing improved designs that in any way affect the safety of their products, since the manufacturer would then be subject to the onerous, and oftentimes impossible, duty of notifying each owner of the previously sold product that the new design is available for installation, despite the fact that the already sold products are, to the manufacturer's knowledge, safe and functioning properly.

> Moreover, in a case such as this, where at the time of the accident and for nine years prior thereto, the product in question was under the control of the [purchaser] and its service company, . . . it is clearly more appropriate to impose a duty to insure that the product is functioning properly or to update the design of the product in the light of new technology on those parties, rather than on the manufacturer who relinquished control years ago.

548 A.2d at 1280–81; *see also Gregory; cf. Rodriguez,* 115 Ariz. at 460, 565 P.2d at 1321 (extending manufacturer's duty to warn to situations in which it is notified of third-party modification after the product has left its possession and control "would place an intolerable burden on the manufacturer").

¶ 14 We conclude that the trial court properly granted summary judgment for appellee, correctly finding it had no legal duty to notify past customers that a new door opening device had become available. In view of this conclusion, we need not address Wilson's argument that the elevator was unreasonably dangerous in the absence of such notification under the consumer expectation doctrine of *Readenour,* or the remaining issues he raises.

¶ 15 The judgment of the trial court is affirmed.

PELANDER, P.J., and HOWARD, J., concur.