Connie L. HABECKER, Individually and as Personal Representative of the Estate of John R. Habecker, Deceased; and John Michael Habecker, Minor, by Connie L. Habecker, his Parent, Natural Guardian and Next Friend, Plaintiffs,

v.

CLARK EQUIPMENT COMPANY and Forklifts, Inc., Defendants.

Civ. A. No. 1:CV–86–0352.

United States District Court, M.D. Pennsylvania.

March 31, 1992.

On Motion to Reconsider Aug. 25, 1992.

Stephen M. Greecher, Jr., Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., Samuel Posner, Gerald F. Posner, Posner, Posner & Posner, Detroit, Mich., Hy Mayerson, Norristown, Pa., for Connie L. Habecker and John Michael Habecker.

Susan L. Parsons, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Stanley Boychuck, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Richard W. Hollstein, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Clark Equipment Co.

Stanley Boychuck, Wildman, Harrold, Allen & Dixon, Chicago, Ill., F. Lee Shipman, John Andrew Statler, Goldberg, Katzman & Shipman, Harrisburg, Pa., for Forklifts, Inc.

## MEMORANDUM

RAMBO, District Judge.

Before the court are six motions filed in anticipation of the retrial of this strict products liability action—five by plaintiffs and one by defendants—addressing a farrago of issues. These motions are fully briefed and ripe for disposition.

*Background*

This action arises from the death of John Habecker in 1984. Mr. Habecker, a civilian employee at the New Cumberland Army Depot, was killed when a forklift he was attempting to back down a ramp slipped off the side of the ramp. The mishap threw Mr. Habecker out of the cab, and he was crushed beneath the falling forklift. The forklift involved in the incident was manufactured by defendant Clark Equipment Company ("Clark") and leased to the Army by defendants Forklifts, Inc. ("Forklifts").

In March 1986, Mr. Habecker's estate, his wife, and his son brought suit in negligence, breach of warranty and strict liability against several defendants, including Clark and Forklifts. Prior to the first trial, plaintiffs dropped the warranty and negligence claims. As only the strict liability claim remained, and Forklifts was indemnified by Clark in such a circumstance, the parties signed a stipulation dismissing with prejudice Forklifts' third party claim against the Department of the Army and the United States.

At the first trial, this court granted a directed verdict against plaintiffs on the

issue of whether the throttle was defective. Thus, the only issues which were considered by the jury were whether Clark and Forklifts were strictly liable due to the forklift's lack of an operator restraint system. The jury brought in a verdict for defendants.

Plaintiffs appealed to the Third Circuit Court of Appeals. The Third Circuit found that this court had committed prejudicial error in excluding the testimony of one of plaintiff's expert and remanded the case for a new trial "on the operator restraints issue." *Habecker v. Copperloy Corp.*, 893 F.2d 49, 54 (3d Cir.1990) (hereinafter *Habecker I*). The directed verdicts were upheld. *Id.*

At the first trial, plaintiffs had pursued only the theory that the forklift was defective when manufactured in 1977, and not when it was leased to the Army by Forklifts in 1983 and again in 1984. In a series of letters in April 1990 defendants and plaintiffs traded arguments before the court as to whether the additional theory should be permitted or not. On April 27, 1990, this court issued an order stating "the sole issue for retrial is whether the forklift was defective when it left Clark Equipment in 1977 because it lacked a seatbelt or operator restraint system."

A second jury trial was held in June 1990, and addressed only issue of whether the lack of restraints made the forklift unreasonably dangerous when manufactured in 1977. Again the jury returned a verdict for defendants.

Plaintiffs appealed once more, this time asserting that this court erred in admitting evidence of what was known in the industry at the time about the efficacy of operator restraints in forklifts in 1977—information which they claimed was irrelevant in a strict liability case. They also argued that this court had taken too narrow a view with regard to its ability to permit the new legal theories to be pursued at retrial.

The Third Circuit again reversed and remanded the case for a new trial. The circuit panel held that this court erred in permitting the testimony establishing the desirability or undesirability of the restraints in 1977, noting

> the only question for the jury was whether an operator restraint system is an 'element' necessary to make [a forklift] safe for its intended use.... Evidence about what Clark knew or could have known about the desirability of operator restraint systems at the time of manufacture is not relevant to that question.

*Habecker v. Clark Equipment Co.*, 942 F.2d 210, 216 (3d Cir.1991) (citation omitted) (hereinafter *Habecker II*). The panel found that the admission of this evidence may have improperly focused jury attention on Clark's conduct, and not on the forklift itself and was therefore prejudicial. *Id.* at 216–17.

In addition, the panel wrote that this court's view of the scope of its discretion to allow in new theories upon retrial was too narrow. According to the Third Circuit, a district court is not bound by the Circuit's previous mandate outside of the specific holdings in the opinion.

The third trial in this matter had been scheduled for April 1992 and will be scheduled for some time this spring or in the early summer. Plaintiffs have filed five motions attempting to clarify the issues for trial and to reopen discovery.[1] Defendants have filed a joint "Motion to Limit Issues During Trial."

As the court reads the various motions, it becomes apparent that disposing of some issues will moot related issues raised in other motions. The court will therefore endeavor to consider the motions featuring the dominant issues first, and then address any remaining issues in the following motions.

---

1. Plaintiffs' motions are styled as: 1) "Motion to Allow Issues to be Raised Upon Retrial;" 2) "Motion for Partial Summary Judgment and/Or to Preclude Defendants from Withdrawing Judicial Admission;" 3) "Motion for Partial Summary Judgment as to Product Defect;" 4) "Motion to Compel Answers to Interrogatories;" and 5) "Motion to Permit Discovery and to Allow Additional Witnesses and Evidence to be Used Upon Retrial."

*Discussion*

I. "Motion to Allow Issues to be Raised Upon Retrial" and "Motion to Limit Issues During Trial"

The court will first address the motions filed by defendants and plaintiffs attempting to limit or expand (depending on the party's position) the legal theories which may be raised at the third trial. The issues in contention are two:

1) Should plaintiffs be able to claim that the forklift was defective when placed into the stream of commerce by the series of leases between the Army and Forklifts in 1983 and 1984?

2) Should plaintiff be permitted to pursue the theory that the forklift was defective due to a lack of post-sale warnings?

As stated earlier, this court erroneously ruled prior to the second trial that the Third Circuit mandate deprived it of the ability to allow new issues to be pursued upon retrial. The *Habecker II* panel corrected this assumption, stating:

A district court's discretion ... includes the authority to allow any theory that would be supported by the complaint and that was not eliminated either by its earlier orders, not pursued on appeal, or by this court's mandate.... We express no view on whether the district court should permit a new theory of liability to be pursued at this stage of the proceeding. The district court may well determine that allowing the Habeckers to determine liability not raised until after the close of discovery and the completion of an entire trial would result in undue prejudice to the defendants. Moreover, the district court may conclude that Forklifts— which has dismissed its third-party claim against the Army—would be unfairly prejudiced by permission to litigate a new theory. We hold only that the decisions on whether to allow new claims,

whether to permit further discovery, and whether to hear additional evidence were all within the district court's discretion. *Habecker II*, 942 F.2d at 218. The Third Circuit clearly states, and both parties appear to agree, that whether to permit new issues on retrial is a matter committed to the discretion of the trial court. *See* Plaintiffs' Reply Brief at 2.

With the guidance of *Habecker II* in mind, the court will address whether plaintiffs should be permitted to go forward with these additional theories or not.

A. *The 1983 and 1984 Leases*

■ Plaintiffs argue that this issue was pled in their First Amended Complaint, in ¶¶ 7–8 ("Forklifts was engaged in ... the rental, leasing, and maintenance of forklifts") and ¶ 15 ("The defect(s) in said forklift existed at the time it left defendant Forklifts's control"). Citing *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), plaintiffs point out that Pennsylvania law extends strict liability to all suppliers of a product engaged in the business of supplying products for consumption by the public—a group which would include, in the present circumstances, Forklifts. Plaintiffs then argue that

[i]t would be highly prejudicial to plaintiffs if they were not permitted to raise this issue upon retrial, as the facts now known and established show clear liability against Forklifts under Pennsylvania products liability law, and it is clearly in the interests of justice to allow plaintiffs to raise this issue upon retrial.

Plaintiffs' Brief in Support of Motion to Allow Issues to Be Raised Upon Retrial at 18.[2]

Defendants contend 1) that plaintiffs withdrew with prejudice the leases issue prior to the first trial and that 2) Forklifts relied on that withdrawal to its detriment

---

**2.** The court notes that plaintiffs cite 5 Am.Jur. 2d, Appeal and Error, § 955, at 382, in support of their position: *"The case may be retried in the light of knowledge acquired since the former trial,...."* Brief in Support at 18 n. 2 (emphasis added by plaintiffs). The court is not certain how this authority is relevant to the issue of the

leases, as plaintiffs acknowledge in their brief that they could have pursued this issue at the first trial, but did not do so "for tactical reasons." Plaintiffs have not described any evidence acquired after the first trial which would make the claims on the leases more desirable to pursue at this third trial.

by voluntarily dismissing the United States and the Army as third party defendants when it appeared that Forklifts would have no independent liability.

Plaintiffs dismiss this assertion as "patently false," and states that "[a]ll plaintiffs did ... was to withdraw their negligence claims against all defendants and elect to proceed on their strict liability claims only.... Forklifts then, on its own, a few minutes later, stipulated to dismiss its third party claim against the United States. *See* Reply Brief at 5.

The court disagrees with plaintiffs' characterization of Forklift's stipulation to drop the third party defendants from the case. This action was obviously precipitated by the fact that no direct claims were being pursued against Forklifts just prior to trial, and that Forklifts therefore had no need to over-complicate this case with needless parties. To permit plaintiffs to pursue the lease claims now would work an extreme prejudice on Forklifts due to its reliance on plaintiffs' actions and representations prior to the first trial. To the plaintiffs' side of the balance sheet, the court can discern no new facts or law which have come forward since the end of the first trial which would make pursuing the leases issue any more desirable now as opposed to then, which might militate toward admitting the lease claims.

Accordingly, due to the prejudice suffered by Forklifts in reliance on plaintiffs' initial decision not to pursue the leases theory at the first trial, the court will not permit the introduction of this theory into the upcoming trial.

## B. *The Post–Sale Duty to Warn*

Plaintiffs state that they did not pursue this theory at first trial due to their mistaken belief that it had been precluded by this court's rejection of the retrofit argument.

Plaintiffs argue that Pennsylvania law on this issue has been settled by the Pennsylvania Superior Court in *Walton v. Avco Corp.*, 383 Pa.Super. 518, 557 A.2d 372

(1989), *app. granted*, 524 Pa. 594, 568 A.2d 1245 (1989), which, they represent, held that lack of a post-sale warning could establish strict liability. Conversely, defendants posit that *Walton* is an anomalous decision and should not be followed as the law of Pennsylvania by this court.

*Walton v. Avco Corp.* was decided in March of 1990, about one month after the close of the first *Habecker* trial, while this case was on its first appeal. The Supreme Court of Pennsylvania granted defendant's petition for appeal in April 1990; the court has not ruled on that appeal to this date. Plaintiffs state that they opted not to pursue a cause of action for post-sale duty to warn at the first trial because the law was unsettled with regard to whether such the failure to tender post-sale warnings could give rise to a strict liability cause of action and because they felt that such a claim had been ruled out by the court's dismissal of plaintiffs' duty to retrofit argument. Plaintiffs point out, however, that the Third Circuit in *Habecker I* stated in a footnote that this court's ruling on the retrofit issue did not preclude plaintiffs from raising the issue at the first trial. 893 F.2d at 54 n. 4.

*Walton* involved a suit by the estates of two men killed in the crash of a helicopter against the manufacturer of the engine, Avco, and the manufacturer of the finished helicopter, Hughes Aircraft. Hughes had learned from Avco that the oil pumps in the engines of the helicopters were defective. *Walton*, 557 A.2d at 375. Hughes, despite knowing of potentially dire consequences, failed to pass this information on to its customers. The court held that, given the circumstances, Hughes was strictly liable for the failure to issue such warnings.

■ This court has closely studied the *Walton* opinion and other Pennsylvania jurisprudence on the existence of a post-sale duty to warn, and declines to permit plaintiffs in this case to use the *Walton* decision to add such a cause of action for several reasons.[3]

---

**3.** Although a federal court sitting in diversity jurisdiction may, in determining governing state law, give the decrees of lower state courts some weight, it is not bound by those decisions as it

## 1. Walton vs. Lynch

First, *Walton* appears to be at odds with the decision of another Superior Court panel the year before. In *Lynch v. McStome & Lincoln Plaza Associates*, 378 Pa.Super. 430, 548 A.2d 1276 (1988), a Superior Court panel held that, in a products liability action sounding in negligence, there is no cause of action for a continuing duty to warn purchasers of new developments which may make the product more safe. *Lynch* involved an escalator system at a mall which had allegedly come to an abrupt stop and injured the plaintiff. The trial court refused to admit evidence proffered by the plaintiff indicating that the escalator manufacturer could have notified purchasers of the escalator that a new braking device was available which would have increased the stopping distance of the escalator. The panel upheld the trial court, indicating that they were "unaware of any Pennsylvania precedent that imposes such a broad duty on a manufacturer." *Lynch*, 548 A.2d at 1281.

Plaintiffs argue that *Lynch* is inapposite to the present matter, since the *Lynch* holding specifically addressed the post-sale warning issue only as it applies to negligence, and not strict liability, claims.

The court, however, believes that some of the language in *Lynch* indicates broader considerations than its actual holding might imply. Discussing the nature of a continuing duty to warn, the *Lynch* panel stated:

> The clear effect of imposing such a duty would be to inhibit manufacturers from developing improved designs that in any way affect the safety of their products, since the manufacturer would then by subject to the onerous, and oftentimes impossible, duty of notifying each owner of the previously sold product that the new design is available for installation, despite the fact that the already sold products are, to the manufacturer's knowledge, safe and functioning properly.

548 A.2d at 1281. Clearly, this language demonstrates that the panel was concerned with the burden manufacturers might face if subjected to liability for failing to follow through in notifying every consumer of their products of design changes. Such reasoning would apply equally, and perhaps moreso, to strict liability claims as opposed to negligence, as liability for failure to notify would be applied without any consideration of plaintiff's or defendant's conduct and without the benefit of defenses such as contributory negligence.[4] In addition, *Lynch* relies heavily on a case from the Appellate Division of the New Jersey Superior Court, *Jackson v. New Jersey Manufacturers Insurance Co.*, 166 N.J.Super. 448, 400 A.2d 81, 89–90 and n. 3 (1979), which denied the plaintiff's post-sale duty to warn claims under both § 402A and negligence. *Jackson*, 400 A.2d at 89 ("Whether this claim, essentially one of failure to warn, is viewed as sounding in negligence ... or strict liability ... makes no difference.") (citations omitted). The reliance on this language by the *Lynch* panel certainly indicates at least a level of knowledge, and perhaps approval of, the concept that a "post-sale" duty should not

---

would be by a pronouncement of the state's highest court—here, the Pennsylvania Supreme Court. *Paoletto v. Beech Aircraft Corp.*, 464 F.2d 976, 979 (3d Cir.1972) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)). In fact, in a recent products liability opinion, *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 440–44 (3d Cir.1992), the Third Circuit explicitly refused to follow a Superior Court decision, *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987), and rendered its holding inapplicable to cases within the jurisdiction of the circuit. Accordingly, this court will examine any relevant Superior Court precedent here, but will not give it controlling effect.

**4.** It is bewildering to this court why a state would permit the viability of a strict liability but not the harder-to-prove negligence claim, as opposed to the reverse. Plaintiffs themselves implicitly acknowledge this point in their reply brief, noting that Michigan is, with "100% certainty," a "negligence only jurisdiction" because it is a "state so dominated by the auto manufacturers." Plaintiffs' Reply Brief at 12. Permitting strict liability post-sale warning claims only, however, as the *Walton* case establishes for Pennsylvania, protects no one—manufacturers are faced with the possibility of strict liability while injured parties cannot pursue negligence claims as an alternative cause of action.

be made viable in either negligence or strict liability on public policy grounds.

The *Walton* panel does not even discuss *Lynch,* however, and proceeds as if the broad public policy language in that case does not exist.

## 2. Nature of Plaintiffs' Claim

■ This court is also troubled by the fact that the substantive nature of the claim involved in *Walton* differs from that being pursued in the present matter. As the court understands plaintiffs' claim here, they contend that defendants had a duty, when Clark began to produce new forklifts (and to retrofit older models) with restraining devices in 1983, to issue warnings to the users of older forklifts that they may not be as safe without such devices. The failure to do so thus rendered the forklifts unsafe in violation of § 402A. *See* Plaintiffs' Pretrial Memorandum at 19–20 (Nov. 25, 1988) (Third Circuit Appendix at 86a–87a) (in the alternative to liability for failure to retrofit, defendants should be liable for "failure to advise the users of the forklifts to discontinue use of Clark forklifts pending installation of the Clark operator restraint system").

The allegations in *Walton,* conversely, dealt with a defective component which went out as part of a finished product, rendering the product unsafe for use when it left the manufacturer. The component fabricator learned of the defect and warned the manufacturer, who then failed to warn the final consumer of the product. The *Walton* panel held that the manufacturer could be held strictly liable "for the defective nature of the helicopter when it failed to warn of the defects in the design of the helicopter's engine which were discovered and publicized after the sale of the aircraft." Here, the claim, as framed in plaintiff's pretrial memorandum, appears to intimate that the "post-sale" strict liability claim arose when Clark and Forklifts became aware that restraints could be install-

ed and failed to inform consumers of the product to discontinue use unless the devices were put in place.

This court sees a qualitative difference between a "defect" such as the absence of restraints here, which is patent, and the latent, internal defect such as the one in the helicopter engine in *Walton.* Moreover, the risk involved in the present case came not from the normal everyday use of the product, as with the oil pump in *Walton,* but instead arose from the increased danger of injury should a rollover occur.[5] The court does not see this as a situation where the forklift contained a structural defect in, say, one of its axles which, over time, might cause it to crash. Instead, Clark had developed a harness which it felt would make the forklift safer and had begun to install it on newer models.[6] While this court is aware that, to establish a strict liability claim the defect need not be latent, the court is nevertheless wary of extending *Walton*'s novel cause of action past its facts given these considerations.

## 3. Subsequent Interpretations

An additional factor which would militate the court toward a narrow reading of *Walton* is the fact that this court has not found and plaintiffs have not cited, in either Pennsylvania state or federal courts, has actually permitted a plaintiff to recover under the *Walton* "post sale duty to warn" holding.

## 4. Walton Caveat

■ Last, the court is concerned with the caveat written into *Walton* itself. Cognizant of the practical difficulties that the imposition of this new duty would mean to sellers and manufacturers of goods, the *Walton* panel stated that "boundaries must indeed be recognized" and that the social policy that "assures ... product manufacturers and sellers that they will not become the effective insurers of their products." The court continued, "In our desire to compensate the persons who have been injured by defective products, we should not be

---

5. There is no dispute that, absent the two theories plaintiff is attempting to pursue here, the only remaining issue in the case is whether the forklift was "crashworthy" without the restraint system. *See Habecker II,* 942 F.2d at 213.

6. In this manner, the facts here are closer to those of *Lynch* than to those of *Walton,* which makes the public policy concerns voiced in *Lynch* that much more relevant to this case.

willing to impose upon product suppliers legal duties that are unreasonable, and therefore, effectively unobtainable." 557 A.2d 372. The panel stated clearly that its decision related to "a unique and costly product," and not "a household good, commonly found in almost any home in this country." *Id.* at 379.

With regard to the present situation, the court notes that, while forklifts are not common household goods, they are certainly much more prevalent than helicopters. Nearly any business which has a loading dock or a warehouse has a forklift, and it does not stretch the boundaries of imagination to envision frequent inter-business transfers of this type of equipment. Accordingly, with the *Walton* panel's own warning in mind, this court is not willing to extend that doctrine to common business appliances such as forklifts. *See Estate of Rapp v. Clark Equip. Co.*, slip op., No. G88614CA7 (W.D.Mich.1989) (holding that duty of forklift manufacturer to notify of safety improvements was unreasonably burdensome).

### 5. Conclusion

The *Walton* decision is the sole decision to which plaintiffs may point as establishing a post-sale duty to warn on the part of manufacturers. At this point, however, that decision appears to be at the very least in a state of confusion. Given this, and absent further guidance from any other Pennsylvania court, this court in its sound discretion is not willing to extend the cause of action provided to the plaintiff in *Walton* past its own facts and to plaintiffs here for the purposes of retrial.[7]

II. "Motion for Partial Summary Judgment and/or to Preclude Defendants from Withdrawing Judicial Admission and Stipulation and From Raising Formerly Withdrawn Issue at Retrial"

Through this motion, plaintiffs essentially request that the court prevent defendant Clark from withdrawing several admissions made by their attorneys prior to and at the second trial.

First, plaintiffs point to a colloquy in chambers on June 18, 1990, where the issue of whether physical restraints could have been installed on the forklift when it left the Clark factory in 1977.

THE COURT: I want to go over some matters so we know the groundwork that we're operating under.

First of all, do the Defendants contest the issue of feasibility? Is that an issue in the case or not?

MR. HOLLSTEIN: Putting the system on?

THE COURT: Right.

MR. HOLLSTEIN: We don't contest that.

THE COURT: So that's not an issue?

MR. HOLLSTEIN: That's right.

MR. BOYCHUCK: The mere installment of the hardware as opposed to ...

THE COURT: The feasibility that a system is available.

MR. BOYCHUCK: As opposed to any agreement that that ...

THE COURT: Whether or not that system is adequate is another issue.

Transcript, In Chambers Conference, at 3 (June 18, 1990).

At the trial, counsel for defendant Clark noted, in response to a motion to exclude the computer modeling evidence, that:

First of all, with regard to the feasibility issue, early on in the case we stipulated that it would have been physically possible to put a seat belt or wings on the forklift earlier on.

Later, Clark's lawyer and the court had this exchange:

THE COURT: With regard to the technical feasibility issue, as I understand

---

**7.** The court of course realizes that the Pennsylvania Supreme Court, while this matter is pending, may shed some light on the state of the post-sale duty to warn when it rules on the *Walton* appeal. In the interests of sound judicial administration, this court is not inclined to wait for the Supreme Court, as it has already been nearly two years since the appeal was taken and no decision has yet been issued. Moreover, according to plaintiffs' reply brief, the post-sale duty to warn issue is not even being contested on appeal, and thus the murky situation with which this court is faced may be present for some time.

the theory, the technology goes not to whether or not a seatbelt could be put on but, in essence, whether or not the equipment would become defective with a restraint system, and until the technology was available to test the effect putting a seatbelt on I think goes to the issue of whether there was a defect, and I want the Defendants to make it perfectly clear to the jury in their closings that you don't contest the feasibility of putting a seat restraint system in.

MR. HOLLSTEIN: I have no objection if Your Honor would like to tell the jury in your charge that we don't contest the fact that a belt or wing could physically have been put on.

Trial Transcript at 29–30 (page 688a, Third Circuit Appendix). Last, in his closing, defense counsel argued:

MR. HOLLSTEIN: And then we get to Clark's program. And you may have heard Mr. Miller say oh, it was feasible to put a seatbelt on the forklift in '77. It was feasible to put a wing on. Sure. Seatbelts have been around. They could have thrown a seatbelt on the forklift. What would it have cost, nickles and dimes to put a seat belt on? But the point is not trying to cover yourself in litigation or doing what seems to be the simple thing. The question is what is best for the forklift operator.

Trial Transcript, Volume VIII, at 85 (June 25, 1990).

In *Habecker II*, the Third Circuit panel appeared to read these statements as establishing an admission that some type of restraint device could have been installed in 1977: "Clark has conceded that an operator restraint system would have been feasible in 1977. Therefore, in order to determine whether the forklift was 'defective,' the only question for the jury was whether an operator restraint system is an 'element necessary to make [a forklift] safe for its intended use....'" *Habecker II*, 942 F.2d at 216 (citation omitted).

Plaintiffs argue that defendants should be bound to these admissions at the third trial, and should not be permitted to litigate the feasibility issue. Defendants in turn contend that any admissions made at the second trial were for the limited purpose of stipulating that "if this operator restraint system existed, it would have been physically possible to install this system on the forklift in 1977." Defendant Clark's Brief in Opposition at 3. "The existence of the system has never been admitted; it was simply not pursued for tactical reasons." *Id.* at 4–5. Clark reasons that whether the restraint system later employed by Clark was "feasible" in 1977 is a question distinct from whether it was "desirable," and thus remains as a defense. *See Habecker II*, 942 F.2d at 215.

■ In *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972), the Third Circuit reiterated that judicial admissions on issues of fact, including those made by counsel on behalf of a client during a trial, are binding "for the purpose of the case ... including appeals." Various lower courts have applied this rule against parties, so long as the admission was "unequivocal." *See Childs v. Franco*, 563 F.Supp. 290, 292 (E.D.Pa.1983) (counsel's admission in closing argument that plaintiff had suffered "some injury" was binding); *see also In re Eagson Corp.*, 37 B.R. 471 (Bankr.Pa.1984); *Eureka Investment Corp. v. Chicago Title Ins. Co.*, 530 F.Supp. 1110, 1117 (D.D.C.1982).

■ The court believes that Clark's admission through counsel at the second trial must be read more broadly than Clark urges. As an initial matter, the court sees no equivocation in Clark's admission. However, the court is not willing to give these admissions as wide a scope as plaintiffs would like. As the court reads the various statements, defendant Clark has conceded that the installation of *some type of restraint system* was feasible in 1977. The nature of such a system, as characterized by defense counsel, would be some sort of a "seatbelt" or some sort of a "wing." The court will therefore limit any stipulation or admission which would carry over to this third trial accordingly.

■ The court also holds that Clark's admission does not apply to Forklifts. Plaintiffs have not shown any identity between the two parties, nor have they cited any authority which would lead this court to believe that any admission by Clark is binding on Forklifts, a separate entity which is merely a co-defendant with Clark in the action. However, as a practical matter, it seems to the court that Forklifts, as purchaser and lessor of the forklift in 1983 and 1984, would be hard put to deny such an admission by the manufacturer Clark with regard to what was feasible when the forklift was produced.

III. "Motion for Partial Summary Judgment as to Product Defect"

■ Plaintiffs ask that the court grant summary judgment on the holding that the forklift was defective for lack of an operator restraint when it left the Clark factory in 1977. Plaintiffs cite 1) the admission discussed in the previous section; and 2) the videotape "Live to Tell About It" which explains the addition of an operator restraint system to Clark forklifts in the early 1980s, as establishing that there is no genuine issue of material fact present here as to whether the forklift was defective.

The standards for the award of summary judgment under Federal Rule of Civil Procedure 56 are well known. As the Third Circuit Court of Appeals recently capsulized:

Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence

is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, 106 S.Ct. at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987).

In *Habecker II*, the Third Circuit panel framed the sole jury question for the second trial thusly:

In this case, Clark has conceded that an operator restraint system would have been feasible in 1977. Therefore, in order to determine whether the forklift was "defective", the only question for the jury was whether an operator restraint system is an "element necessary to make [a forklift] safe for its intended use", *Azzarello v. [Black Brothers Co., Inc.* ], [480 Pa. 547] 391 A.2d [1020] at 1027 [ (1978) ], a question to be answered on the basis of all knowledge available at the time of trial.

*Habecker II*, 942 F.2d at 216.

In response to plaintiffs' motion, defendant Clark rightly points out that simply because Clark had admitted that some type of restraint could be attached in 1977 does not mean that the forklift was unsafe without it. Moreover, the addition of a system at a future date too does not mean that the prior model was defective. Plaintiffs cite not a single case where a court has so held. The issue for trial here as framed by the Third Circuit presents questions for the jury, to be decided on the basis of expert testimony and any other admissible evidence. *See* Trial Transcript, Volume VII, at 46 (Exhibit A, Expert Testimony of Entwhistle, stating that the forklift "was not defective when it was manufactured and distributed in 1977 because of the fact that it did not have an operator restraint on it."). Accordingly, the court holds that contested material issues of fact remain

and that summary judgment is not appropriate on this issue.[8]

## IV. "Motion to Compel Answers to Interrogatories"

Plaintiffs next request that the court compel defendants to answer certain interrogatories which were first tendered and answered in 1987. These interrogatories, numbered 17 through 20, concerned the existence of other accidents and injuries or other lawsuits involving Clark forklifts. Clark, in answering these four interrogatories, posed various objections and gave a limited answer to interrogatory 17. Until now, five years and two trials later, plaintiffs had not made a formal motion to compel answers to these interrogatories.

The interrogatories in question read as follows:

17. Has Clark Equipment Company received notice of injury to any other person as a result of ejection caused by a lateral roll/tip over pertaining to any forklift product manufactured by them, with particular emphasis on the Clark 5000 pound capacity forklift?

18. If the answer to Interrogatory No. 17 is in the affirmative, please state:

(A) The name and address of the injured party;

(B) The date of the notice; and

(C) A description of the forklift involved.

19. Has there been other litigation against Clark Equipment Company pertaining to injuries sustained as a result of a lateral roll/tip over related to any of its forklift products, with particular emphasis upon the Clark 5000 pound capacity forklift?

20. If the answer to Interrogatory No. 19 is yes, please state:

(A) The title and date, court and cause, and name of attorney for plaintiff.

Defendant Clark answered number 17 by objecting to the question as overly broad, contending that it requested information about any type of forklift rollover accidents, including those involving circumstances very much unlike those in Mr. Habecker's accident. Clark did state, however, that a firm in Palo Alto, California had compiled accident reports and summaries submitted to Clark, and that these would be available for review. Plaintiffs never apparently attempted to review these files. Clark answered the remaining questions by referring plaintiffs to answer number 17.

Plaintiffs state that their new local counsel hired for the second trial, Hy Mayerson,[9] pointed out that numerous cases were pending against Clark at the time which, they claim, were directly relevant in answering plaintiffs' interrogatories. They further indicate that the emergence of this information shows at the very least bad faith on the part of Clark and should entail essentially reopening discovery on these other cases.

Prior to the second trial, the court, as stated earlier in this memorandum, was bombarded with letters from counsel. This issue was among those discussed in those letters (which were, apparently, part of the record on appeal). In its order of April 27, 1990, the court denied plaintiffs' informal request to compel discovery and impose sanctions on Clark, stating that "[t]he court seriously questions the propriety of [a draft motion for sanctions against Clark] in light of Clark's specific objection to the interrogatories in question, its answer to the portion of the interrogatory it deemed appropriate and plaintiffs' apparent satis-

---

**8.** In their reply brief, plaintiffs indicate that both defendants should be held to have admitted plaintiffs' proposed statement of material facts because they failed to file a counterstatement of facts as required by Local Rule 401.8. While defendants do appear to have overlooked filing their counterstatements, the court is not inclined to grant summary judgment on that basis. This case has been through two trials. The court can safely conclude that defendants do not admit the facts as proffered by plaintiffs.

**9.** Whose name, plaintiffs state, they discovered in an advance copy of the article "Defective Forklift Truck" in 3 Am.Jur. Proof of Facts 3d 615, where Mr. Mayerson was thanked by the author for his assistance in providing information with regard to various ongoing forklift suits.

faction with the information by Clark (indicated by plaintiffs' failure to file a motion to compel at the appropriate time)."

Plaintiffs argue that the Third Circuit in *Habecker II* essentially has directed this court to reopen discovery, citing the following passage:

[I]n order to determine whether the forklift was "defective", the only question for the jury was whether an operator restraint is an "element necessary to make [a forklift] safe for its intended use", ... a question that is to be answered on the basis of *all the knowledge available at the time of trial.* Evidence about what Clark knew or could have known about the desirability of an operator restraint system at the time of manufacture is not relevant to that question.

*Habecker II*, 942 F.2d at 216 (emphasis added). The magic words, according to plaintiffs, are that the question of defectiveness must be answered on the basis of "knowledge available at the time of trial."

The court believes that plaintiffs read the language in that snippet of opinion out of context. As this court interprets the opinion, the Third Circuit is merely referring to the jury's duty to judge whether a product is defective on the basis of knowledge available for presentation at the time of trial. It is not a mandate to reopen discovery every time a case is remanded. A party's continuing duty to update discovery requests will presumably perform the function of keeping the trial current.

Instead, it is clear that the decision whether to reopen discovery or not is within the sound discretion of the trial court. *Habecker II*, 942 F.2d at 218 ("We hold only that the decisions on whether to allow new claims, whether to permit further discovery, and whether to hear additional evidence were all within the District Court's discretion.").

Plaintiffs contend that Clark has abused discovery procedures in other cases in the past and did so when it objected to and gave only limited answers to interrogatories 17 through 20. The court, however, is not sure it sees the relevancy of any alleged discovery abuses in other cases to the matter at hand here—that is, whether Clark should be compelled to answer the contested interrogatories.

Plaintiffs also cite the case of *Gammon v. Clark Equipment Co.*, 38 Wash.App. 274, 686 P.2d 1102, 1107 (1984), *aff'd on other grounds*, 104 Wash.2d 613, 707 P.2d 685 (1985) for the proposition that, even up to the point of trial, if a party does not fully answer discovery requests, discovery must be reopened.

However, unlike *Gammon*, this case has been through two trials already in five years, and plaintiffs are only now, prior to the third trial, attempting by motion to resolve the discovery dispute. Other factors, discussed below, counsel against a wholesale opening of discovery based on *Gammon*.

First, the court is of the opinion that Clark was not as forthcoming as it might have been in answering the four interrogatories. The court is not inclined, however, to permit plaintiffs to use the information at issue to reopen full-fledged discovery. It does so for several reasons: 1) If plaintiffs were unsatisfied with the answers given or the information provided, they could have made a motion to compel at any time prior to the first trial; 2) defendant Clark had made available accident reports in 1988, which plaintiffs, for whatever reason, decided not to review;[10] 3) there would appear to be little prejudice to the plaintiff here, as Mr. Mayerson apparently has much of the information requested by plaintiffs in their interrogatories in any event; and 4) as stated in greater depth in the following section of this memorandum the court does not buy the argument that they were denied the opportunity to build a proper case because Clark did not list any other pending litigations in answer to the four interrogatories.

---

10. Plaintiffs essentially admitted this at a telephone conference with the court held March 20, 1992. Counsel for defendant Clark stated that the reports would have been mailed to plaintiff's counsel.

Accordingly, the court will grant to plaintiffs the following relief in response to this motion. Defendant Clark will be ordered to make available all accident reports up to the date of the upcoming trial in this matter, excluding the reports already in the possession of Mr. Mayerson. Clark's counsel has represented to the court that he will stipulate to the authenticity of these reports, thereby relieving plaintiffs of the need to authenticate them at trial.[11] Second, Clark will be ordered to list any lawsuits pending against it involving lateral turnovers and the use of Operating Restraint Systems in Clark Forklifts similar to the one driven by Mr. Habecker as requested in the 1987 interrogatories. Clark is admonished to err on the side of overinclusiveness in answering these requests.

## V. "Motion to Permit Discovery and to Allow Additional Evidence to Be Used Upon Retrial"

Plaintiffs propose that the court permit plaintiffs to reopen discovery in numerous areas for an additional 90–120 day period. The areas they would delve into include additional depositions, explanations of various documents and testimony, discovery regarding expert witnesses in other Clark-related litigation, and other areas. *See* Motion at 10–11. Plaintiffs have further indicated their desire to call new expert witnesses at trial.

As stated in the previous section, whether to reopen discovery is committed to this court's sound discretion.

Plaintiffs attempt to use the interrogatory answers discussed in the previous section as a crowbar to pry open discovery for the entire case. Clark's "failure" to properly answer the interrogatories, goes the argument, has put plaintiffs at a grave disadvantage in uncovering appropriate expert witnesses and other evidence. Plaintiffs contend that only through the sheer serendipity of their discovery of Mr. Mayerson prior to the second trial were they able to see the wide vista of their case, and that they now should be able to explore this new vista.

The court is not convinced by this argument. Certainly there are many ways to find appropriate local counsel, relevant evidence and competent experts other than reviewing the files of other pending litigation against the defendant supplied by defendant. That plaintiffs did not engage in more diligent discovery prior to the close of discovery does not militate toward permitting them to essentially recraft their case on the eve of retrial.[12]

Moreover, as stated in the previous section, plaintiff could have through motions resolved discovery disputes well before the litigation was as far advanced as it is now. The court is not willing at this late date to open discovery wide and essentially reshape this case, putting defendants, which have relied on this court's prior rulings, to significant expense and effort essentially because plaintiffs were not particularly thorough in building their case originally.

It is this court's opinion that this case should proceed through the third trial in essentially the same form as the first two trials, subject, of course, to the Third Circuit's admonitions in *Habecker I* and *Habecker II*. The court will therefore deny plaintiffs' motion to reopen discovery except as authorized in the preceding section of this memorandum.

An appropriate order will be filed.

## ON MOTION TO RECONSIDER

Before the court is Plaintiffs' Motion for Reconsideration of the portion of this court's Memorandum and Order of March 31, 1992 relating to the existence of a post-sale duty to warn in Pennsylvania. The motion has been fully briefed and is ripe for consideration.

---

11. A question remains regarding the admissibility of such statements because of hearsay restrictions.

12. For instance, plaintiffs propose to replace Mr. Brandt as an expert because he was so badly impeached at the second trial. Mr. Brandt, of course, had been excluded by this court at the first trial because of his lack of qualifications and was subsequently reversed by *Habecker I* for doing so.

*Background*

The facts of this case have been recited at length in several opinions by both this court and the Third Circuit Court of Appeals, and the court sees no need to recount them again except to provide context to the present motion.

Following two trials in this court and two remands of this matter from the Third Circuit Court of Appeals[1], Plaintiffs requested that this court permit them to pursue a new claim based on a "post-sale duty to warn" at the pending third trial. Such a claim had not been previously pled or tried in either of the previous trials. Plaintiffs bottomed this new claim on a case, *Walton v. Avco Corp.*, 383 Pa.Super. 518, 557 A.2d 372 (1989), which had been announced by the Pennsylvania Superior Court approximately one month after the defense verdict in the first trial. In *Walton*, the Superior Court ruled that the manufacturer of a helicopter had a duty to warn end users about a defective component in the engines of a line of helicopters after it learned of the defect from the maker of the engine.[2]

Upon motion by Plaintiffs, this court in its discretion declined to permit Plaintiff to pursue a post-sale duty to warn theory at the upcoming third trial. It did so for four reasons: 1) the *Walton* Superior Court opinion appeared to conflict with *Lynch v. McStome & Lincoln Plaza Associates*, 378 Pa.Super. 430, 548 A.2d 1276 (1988), an earlier Superior Court case addressing the post-sale duty to warn; 2) the court found substantial differences between the nature of the claims of the *Walton* plaintiffs and Plaintiffs here; 3) the *Walton* case was the only federal or state court case in Pennsylvania recognizing the duty; and 4) the Superior Court itself in *Walton* issued a *cave-at* as to breadth of the duty—it was to apply to "unique and costly products" and not "household goods,"; in this court's opinion, forklifts, unlike helicopters, tend toward the common product side of the spectrum.

On May 22, 1992, some two years after the defendants' appeal was initially granted, the Pennsylvania Supreme Court handed down a decision affirming the decision of the Superior Court on the issue of post-sale duty to warn. *Walton v. Avco Corp.*, — Pa. —, 610 A.2d 454 (Pa.1992). A month later, Plaintiffs here filed the Motion to Reconsider now before the court, arguing that the Pennsylvania Supreme Court's opinion, which binds this court, sitting in diversity, as precedent, necessitates the vacation of this court's prior decision not to permit plaintiff to pursue the post-sale failure to warn issue on retrial.

*Discussion*

As an initial matter, the court wishes to underline the procedural footing of this motion. The court is not in a position where it is deciding a motion to dismiss prior to trial; instead, the court is merely weighing whether or not, in its discretion, it believes that Plaintiffs should, going into a retrial, be permitted to pursue a cause of action which had been neither pled nor pursued at the prior trial. *See Habecker II*, 942 F.2d at 218; *Habecker III*, at 384.

■ As pointed out by defendant Clark, the Supreme Court decision in *Walton* arguably renders invalid two of the court's four justifications—numbers one and three—for denying Plaintiffs permission to proceed with a post-sale failure to warn claim. The highest court in Pennsylvania has spoken on the issue: there is no doubt that a post-sale failure to warn claim exists

1. The two Third Circuit opinions are: *Habecker v. Copperloy Corp.*, 893 F.2d 49 (3d Cir.1990) (*Habecker I*) and *Habecker v. Clark Equipment Co.*, 942 F.2d 210 (3d Cir.1991) (*Habecker II*). This court's decision on the six motions filed after the Third Circuit's second mandate issued is *Habecker v. Clark Equip. Co.*, 797 F.Supp. 381 (M.D.Pa.1992) (*Habecker III*).

2. Plaintiffs did try to include a post-sale duty to warn claim in the second trial. The court demurred, stating that it was bound to retry the case only on the issues included in the Third Circuit's mandate. In its second opinion in this case, the Third Circuit corrected this assumption: it is within the district court's discretion as to whether to permit a new issue to be pursued at retrial. *See Habecker II*, 942 F.2d at 218.

in some capacity in Pennsylvania.[3] Accordingly, to the extent that the *Lynch* decision is at odds with the supreme court's *Walton* opinion, it is trumped.

Factors two and four cited by the court in the March 31, 1992 opinion still apply, however, and militate against permitting Plaintiffs to move forward with a post-sale failure to warn claim here. First, as noted in the March 31 opinion, the court sees a qualitative difference between an open and obvious "defect" such as the lack of restraints involved here, and a latent defect like the engine component in *Walton*. *See Habecker*, at 387–388. Second, echoing the Superior Court, the Pennsylvania Supreme Court noted that

> [T]he peculiarities of the [helicopter] industry also go far to support this imposition of responsibility. Helicopters are not "ordinary goods." By their nature they are not the types of objects that could get swept away in the currents of commerce, becoming impossible to track or difficult to locate. Helicopters are not mass-produced or mass-marketed products; to the contrary, they are sold in a small and distinct market. Additionally, establishments that service helicopters are convenient and logical points of contact. Even more important, in this case, the manufacturer of the crucial component part remained in contact with Hughes for the very purpose of keeping Hughes current on all pertinent information.

*Walton*, —— Pa. at ——–——, 610 A.2d 454. Clearly, the supreme court was, in acknowledging a post-sale duty to warn, cognizant of the dangers of opening the floodgates of litigation with regard to common products which are purchased, transferred and traded with some frequency and thus nearly impossible to monitor. In its previous commentary on this point, this court stated that it was inclined to place forklifts on the "common" end of the spectrum, and therefore the *Walton* holding did not apply to this matter. *Habecker III*, at

387–388. In its brief, Plaintiffs do not even address this point.

Accordingly, the court, exercising its sound discretion, is of the opinion that its decision not to permit Plaintiffs to pursue a post-sale failure to warn claim in the third trial was not in error despite the recent pronouncement of the Pennsylvania Supreme Court in *Walton v. Avco Corp.*

---

3. The court discussed the facts of *Walton* at length in its previous memorandum, and will not reiterate them here.