**Engle v. BT Industries AB**

C.P. of Dauphin County, no. 248 S 1998.

*Anthony Stefanon,* for plaintiff Engle.
*Richard B. Wickersham Jr.,* for defendants BT Industries, BT Industries of America, BT Prime Mover.
*Jefferson Shipman,* for defendant Lift Truck Services.
*Michael W. Casey,* for defendant Fortna.
*Timothy I. Mark,* for defendant Lift Truck Service Inc.

LEWIS, *J.,* February 16, 1999—Before this court are the preliminary objections of defendants BT Industries AB (BT Sweden), BT Industries of America, BT Prime Mover Company Inc., Fortna Inc., Local Industrial Fork Truck Inc. and Lift Truck Service Inc. to plaintiff's complaint. The facts and procedural history of this case are as follows:

This action was commenced by a writ of summons on January 20, 1998. Plaintiff filed her complaint on April 7, 1998, alleging negligence, breach of warranty and strict liability against several defendants. Plaintiff seeks recovery for injuries she sustained in a work-related forklift accident on January 21, 1996. The forklift that plaintiff was operating was designed, engineered, manufactured, sold and placed into the stream of commerce by defendants BT Sweden, BT Industries of America Inc. and BT Prime Mover Company Inc. (BT defendants). Defendant Fortna Inc. sold the truck to plaintiff's employer. Defendants Lift Truck Service Inc. and Local Industrial Fork Truck Inc. a/k/a Lift Inc. were hired by plaintiff's employer to provide service, maintenance and repair for the forklift. All named defendants have filed preliminary objections.

## I. DUTY TO RECALL/RETROFIT AND/OR WARN

BT defendants' first preliminary objection is in the nature of a demurrer to certain paragraphs of the plaintiff's complaint. Specifically, defendants' preliminary objections address plaintiff's allegations of a duty to recall and/or retrofit as outlined in paragraphs 37 and 38 of the complaint sounding in negligence as well as paragraphs 31 and 32 of the complaint sounding in strict liability. Defendants argue that these paragraphs should be stricken because Pennsylvania does not recognize any post-sale duty on the part of a manufacturer/distributor to warn or recall/retrofit allegedly defective products. For the reasons outlined below, this court agrees that no such duty exists under Pennsylvania law.

In support of this position, defendants rely on *Lynch v. McStome & Lincoln Plaza Associates,* 378 Pa. Super. 430, 548 A.2d 1276 (1988), wherein a similar issue was addressed by our Superior Court. The court was asked to determine whether certain evidence offered by plaintiff was properly found inadmissible. In *Lynch,* the plaintiff had suffered severe injuries after falling from an escalator. The plaintiff sued the manufacturer of the escalator, claiming that the escalator's brake system was unreasonably dangerous and that the manufacturer had a duty to refit the escalator with a safer brake system. The evidence that the plaintiff sought to admit consisted of reports of similar accidents on other escalators and the manufacturer's present use of the safer brake system. The court began its analysis by addressing the plaintiff's contention that the manufacturer should be held to the highest degree of care because it is a common carrier. The court disagreed

with this notion and held that the escalator manufacturer is not a common carrier and is therefore governed by the ordinary standard of reasonable care. The analysis continued in a discussion of whether the exercise of reasonable care includes a post-sale warning or retrofitting. Under the circumstances of that particular case, the court held that such a duty did not exist. The court stated:

"Given the posture of this case, therefore, the precise question presented for decision is this—in a negligence product liability case, where the defendant manufacturer exercises reasonable care in producing a product which functions properly until the time of the accident in question and does not retain any post-sale responsibility for or control over its product, but where it is proven that at the time of the accident the manufacturer knew or should have known of an alternative design, which may be safer, is the manufacturer negligent if it does not retrofit its already sold products, or at least notify the owners of the product of the new design?

"We are unaware of any Pennsylvania precedent that imposes such a broad duty on a manufacturer, nor do we think that the imposition of such a duty would be appropriate under established principles of negligence liability." *Lynch,* 378 Pa. Super. at 440, 548 A.2d at 1281.

Plaintiffs counter this argument claiming that the Pennsylvania Supreme Court recognizes a manufacturer's obligation to recall or retrofit its product. In *Walton v. Avco Corporation,* 530 Pa. 568, 610 A.2d 454 (1992), the court was asked to determine whether a seller of a product could be held liable for physical harm to the user. In *Walton,* the survivors of a pilot killed in a helicopter accident sued the owner of the helicopter as well as the seller manufacturer, the manu-

facturer of the engine installed in the helicopter and the company responsible for its service and maintenance. Avco, the manufacturer of the engine, discovered a defect in the engine and sent a notice to Hughes, the helicopter manufacturer and seller. The notice explained the defect and contained service instructions on how to fix it. However, Hughes never forwarded this notice to the owner or to the service company.

The *Walton* court indicated that the helicopter manufacturer could be held strictly liable for the defect when it failed to warn of the faulty engine design which was discovered and publicized after the sale of the helicopter. The court indicated:

"Hughes' liability stems not only from having incorporated a defective part into its helicopter, but also from its subsequent, undisputed knowledge of the defect . . . .

"Having been informed of this defect, Hughes was required to warn its service centers and, more importantly, those who purchased the affected helicopters . . . ." *Walton,* 530 Pa. at 577, 610 A.2d at 459.

While it is true that liability may arise from a manufacturer's failure to warn of a known defect in a product, and from further responsibility to take reasonable steps to remedy the deficiency, what is reasonable depends on the circumstances of the case. Even the Superior Court's opinion in *Walton,* 383 Pa. Super. 518, 557 A.2d 372 (1989), was quick to point out that it was not endorsing an "absolute continuing duty, year after year," for all manufacturers to warn of defective products. *Walton,* 383 Pa. Super. at 531, 557 A.2d at 379. The court recognized that a helicopter is not a household good commonly found in almost any home in the country such as a lawn mower or even a snow blower. Rather,

it is a specialized, unique and costly product for a highly select market. *Id. Walton* went on to indicate:

"Many issues regarding a manufacturer's post-sale duty to warn are not implicated . . . by our decision here. We leave for future cases the task of formulating the boundaries of a product manufacturer's post-sale legal obligations. We are convinced, however, that boundaries must indeed be recognized." *Walton,* 383 Pa. Super. at 532, 557 A.2d at 380.

In the instant case, the allegedly defective product is a forklift, a product not as unique as a helicopter nor as prevalent as a lawn mower. In that regard, this court is persuaded by the learned U.S. District Court Judge Sylvia Rambo's cogent and expansive discussion of this very issue in *Habecker v. Clark Equipment Company,* 797 F. Supp. 381 (M.D. Pa. 1992). In that case, John Habecker, a civilian employee of the New Cumberland Army Depot, was killed in a forklift accident. His estate filed suit against the manufacturer and distributor of the forklift, claiming negligence, breach of warranty and strict liability.

A key issue in the litigation was whether plaintiff should be permitted to pursue the theory that the forklift was defective due to the lack of post-sale warnings. Examining *Walton, supra,* as well as *Lynch, supra,* Chief Judge Rambo declined to allow such a cause of action, stating four separate reasons. First, Judge Rambo found that such a cause of action would be counter to our Superior Court's holding in *Lynch* which indicated that there is no continuing duty to warn purchasers of new developments affecting safety. Second, Judge Rambo reasoned that there is a "qualitative difference" between a defect such as the absence of a safety device as in the instant case versus a latent defect such as the helicopter engine in *Walton. Habecker,* 797 F. Supp. at

381. Additionally, *Habecker* pointed out that the plaintiff could only produce the *Walton* case to support their position and, fourth, that *Walton* contained a caveat placing "boundaries" on a manufacturer's post-sale legal duties. *Id.*

*Habecker* continued, warning that a "desire to compensate persons who have been injured by defective products" should not lead to the imposition of legal duties that are "unreasonable and therefore, effectively unobtainable." *Id.* at 387-88 (quoting *Walton v. Avco Corporation, supra* at 383 Pa. Super. 518, 557 A.2d 372). Recognizing the abundant presence of forklifts in industry, Judge Rambo opined:

"Nearly any business which has a loading dock or a warehouse has a forklift, and it does not stretch the boundaries of imagination to envision frequent inter business transfers of this type of equipment. Accordingly, with the *Walton* panel's own warning in mind, this court is not willing to extend that doctrine to common business appliances such as forklifts." *Habecker,* 797 F. Supp. at 388.

Additionally, in *Gillyard v. Eastern Lift Truck Company Inc.,* 1992 U.S. Dist. Lexis 1577 (E.D. Pa. 1992), cited in defendant's brief, the plaintiff argued that the manufacturer of a forklift had a "duty to warn customers and/or to take measures to correct alleged product defects" following sale. The court rejected plaintiff's argument, finding no such duty.

## II. BREACH OF WARRANTY

BT defendants next argue that Count III of the plaintiff's complaint should be stricken pursuant to Pa.R.C.P 1028(a)(2). First, defendants contend that plaintiff alleges an express warranty exists; however, plaintiff failed to attach the necessary writing pursuant to

Pa.R.C.P. 1019(h). Therefore, defendants claim this count should be stricken. Plaintiff concedes that the express warranty relied upon in paragraph 41 of the complaint was not attached as required by Pa.R.C.P. 1019(h). However, plaintiff points out that she does not have access to contract documents between her employer and the defendants at this time and that formal discovery is necessary in order to obtain such documents.

Second, defendants assert that this count should be stricken because plaintiff has failed to properly plead the facts which support a breach of implied warranty claim. However, plaintiff maintains that the breach of warranty claim is sufficiently pled.

The Rules of Civil Procedure require that the material facts upon which a cause of action or defense is based be stated in a concise and summary form. Pa.R.C.P. 1019(a); *Schofield v. Griffin,* 117 Dauphin Rep. 338, 339 (1997). "Pleadings serve the function of defining issues and giving notice to the opposing party of what the pleader intends to prove at trial so that the opposition may, in turn, prepare to meet such proof with its own evidence." *Laursen v. General Hospital of Monroe County,* 259 Pa. Super. 150, 160, 393 A.2d 761, 766 (1978) (citations omitted), *rev'd on other grounds,* 494 Pa. 238, 431 A.2d 237 (1981). This rule requires the plaintiff to give the defendant notice of specific facts on which the claim is based and which would then allow the defendant to prepare a defense. When reading the complaint as a whole, it clearly and reasonably informs defendants that it must defend against a breach of warranty claim based upon their involvement in manufacturing and selling the forklift in the defective conditions described. Therefore, defendants' motion on this point will be denied.

## III. PUNITIVE DAMAGES

Next, defendants moved to strike paragraphs 11-19, 30-33 and 71-74 from the complaint because they do not specifically state the facts necessary to support a claim for punitive damages. Punitive damages are awarded to punish a defendant for conduct that is so outrageous in nature that it demonstrates intentional, willful, wanton or reckless conduct. *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 587 A.2d 702 (1991). An outrageous act is one done with a bad motive or with a reckless indifference to the interests of others. *Smith v. Brown,* 283 Pa. Super. 116, 423 A.2d 743 (1980). To determine whether one has acted with "reckless indifference to the rights of others," the allegations in the complaint must establish that the actor actually knew or had a reason to know of facts which created a high risk of physical harm to the plaintiff. *Field v. Philadelphia Electric Company,* 388 Pa. Super. 400, 565 A.2d 1170 (1989). The plaintiff must plead facts so as to put the defendants on notice of what conduct is being alleged as outrageous. *Id.* Whether actions rise to the level of outrageousness lies within the sound discretion of the fact-finder. *SHV Coal,* 526 Pa. at 495, 587 A.2d at 705.

Defendants contend that the plaintiff has failed to plead facts demonstrating that defendants' conduct was malicious, wanton, reckless, willful or oppressive, as mandated to establish an entitlement to punitive damages. On the contrary, plaintiff has alleged that the defendants introduced a defective product into the stream of commerce with the knowledge of defects and the possible harm that they would cause. Such conduct, if proven, may well be interpreted as exhibiting the

type of reckless indifference that may trigger punitive damages.

Further, this court concludes that punitive damages are merely an incident to a cause of action and need not be stated in a separate count. *Daley v. John Wanamaker Inc.,* 317 Pa. Super. 348, 464 A.2d 355 (1983). See also, *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 555 A.2d 800 (1989).

## IV. JURISDICTION

Defendant BT Industries AB (BT Sweden) filed a late supplemental preliminary objection claiming a lack of personal jurisdiction. BT Sweden claims that the plaintiff cannot establish the necessary contacts between the Commonwealth of Pennsylvania and BT Sweden to permit this court to exercise jurisdiction over it. Defendant further claims that in order to establish personal jurisdiction, the plaintiff is required to show that the defendant has enough minimum contact with the forum state so that the action does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Further, defendant claims that the plaintiff has the burden of establishing with reasonable particularity sufficient contact between BT Sweden and the Commonwealth of Pennsylvania to support jurisdiction. *Gahling v. Saint Georges School of Medicine Ltd.,* 773 F.2d 539 (Third Circuit 1989).

Plaintiff counters that BT Sweden has waived the jurisdictional issue not only by its failure to file preliminary objections challenging jurisdiction in a timely manner, but also by filing its initial preliminary objections challenging the merits of the case.

In the instant case, plaintiff filed her initial writ of summons naming BT Sweden as one of six defendants.

A complaint followed on April 7, 1998, again naming BT Sweden. Preliminary objections were filed on behalf of BT Industries of America dated May 18, 1998. The complaint was reinstated on praecipe filed by plaintiff on July 2, 1998 and service was made upon BT Sweden pursuant to the Hague Convention on August 4, 1998. The same counsel representing BT Industries of America filed an appearance on behalf of BT Sweden dated August 13, 1998. BT Sweden filed preliminary objections that same date incorporating by reference the preliminary objections previously filed on behalf of the remaining BT entities as discussed earlier in this opinion. BT Sweden did not file objections challenging jurisdiction at that time.

The preliminary objections of all defendants were appropriately filed and briefed. On September 18, 1998, plaintiff listed the preliminary objections of all the BT defendants as well as Fortna Inc. for the December 1998 session of argument court. BT Sweden then filed supplemental preliminary objections raising the issue of personal jurisdiction together with a brief dated October 22, 1998.

The Pennsylvania Rules of Criminal Procedure are quite explicit and use the imperative in requiring: "All preliminary objections *shall* be raised at one time." Pa.R.C.P. 1028(b). (emphasis added) Pennsylvania law is clear that questions of personal jurisdiction must be raised by preliminary objection or they will be deemed waived. See *Tops Apparel Manufacturing Company Inc. v. Rothman,* 430 Pa. 583, 244 A.2d 436 (1968); *In re Estate of Morell,* 426 Pa. 528, 233 A.2d 522 (1967); *Roskwitalski v. Reiss,* 338 Pa. Super. 85, 487 A.2d 864 (1985), *appeal denied,* 513 Pa. 642, 521 A.2d 933 (1987).

Plaintiff further contends that defendant waived this issue by filing its original preliminary objections on the merits. In *O'Barto v. Glossers Stores Inc.,* 228 Pa. Super. 201, 324 A.2d 474 (1974), the Superior Court held that a written appearance did not constitute the waiver of a right to raise jurisdictional questions. "However, when a party takes 'some other and further action to the merits' of a case, a waiver may be found." *Id.* at 205, 324 A.2d at 476. Again in *Yentzer v. Taylor Wine Company Inc.,* 409 Pa. 338, 186 A.2d 396 (1962), in a case with striking similarities to the instant matter, our Supreme Court held that when a defendant filed preliminary objections which did not raise a jurisdictional question, such activity constituted a general appearance in the action and a waiver of any question of jurisdiction over the person. *Yentzer* at 343, 186 A.2d at 398. The *Yentzer* court elaborated:

"The defendant then filed preliminary objections to the complaint in the nature of a demurrer and a motion for more specific statement. Subsequently . . . without leave of court or consent of the plaintiff, the defendant filed additional preliminary objections to the complaint, alleging that the facts pleaded clearly indicate that the court lacked jurisdiction over the person of the defendant and requesting dismissal of the action. Up to this point, no decision had been rendered by the court upon the merits of the preliminary objections originally filed. . . .

"The basic question for decision is the timeliness of defendant's raising of the jurisdictional question in the court below.

"Pa.R.C.P. 1028(b) provides that all preliminary objections *shall* be raised at one time. Further, Rule 1032, provides that a party *waives* all defenses and objections not raised by these preliminary objections except certain

specified defenses which are preserved, none of which are relevant here. . . .:

"When the defendant filed the original preliminary objections in this case, which objected only to the substance and form of the complaint, *and none of which raised a jurisdictional question, this* constituted a general appearance in the action. . . . It is fundamental that where a defendant enters a general appearance, he waives his right to assert thereafter any possible objection that may exist to jurisdiction over his person." *Yentzer,* 409 Pa. at 340-43, 186 A.2d at 397-99. (citations omitted) (footnotes omitted)

Defendant counters the waiver argument citing *Vant v. Gish,* 412 Pa. 359, 194 A.2d 522 (1963) and *Bowman v. Meadow Ridge Inc.,* 419 Pa. Super. 511, 615 A.2d 755 (1992). In *Vant,* the defendant filed preliminary objections attacking jurisdiction as well as a demurrer, a motion to strike off a pleading, and assertion of lack of capacity to sue, among other matters. Defendant was deemed not to have entered a general appearance submitting himself to the jurisdiction of the court since he was required to join all preliminary objections in one pleading. In the instant case, however, the defendant first raised preliminary objections attacking the complaint. Several months thereafter, following the filing of briefs and an argument court listing, defendant lodged his challenge to jurisdiction.

*Bowman* is also inapposite to the case sub judice. It did not involve a jurisdiction issue but rather an amended preliminary objection to include a motion for a more specific pleading which was filed prior to argument or briefing on the preliminary objections. Therefore, this court finds that defendant BT Sweden has waived the issue of jurisdiction.

Accordingly, the following is entered:

## ORDER

And now, February 16, 1999, having heard the arguments of the plaintiff and defendants, and having reviewed the briefs filed by them, it is hereby ordered as follows:

(1) BT Industries AB, BT Industries of America and BT Prime-Mover Company Inc.'s preliminary objections in the nature of a demurrer to paragraphs 31 and 32 and paragraphs 37 and 38 of the plaintiff's complaint are granted consistent with the attached opinion.

(2) BT defendants' motion to strike Count III of the plaintiff's complaint is denied.

(3) BT defendants and defendants Fortna Inc., Lift Truck Service Inc. and Local Industrial Fork Truck Inc.'s motion to strike paragraphs dealing with punitive damages are denied.

(4) BT Industries AB (BT Sweden's) supplemental preliminary objection on the question of jurisdiction is denied.