717 P.2d 923

**Wayne MAAKE and Mary E. Maake, husband and wife, Plaintiffs/Appellants,**

v.

**ROSS OPERATING VALVE COMPANY, Defendant/Appellee.**

**No. 2 CA–CIV 5392.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 27, 1985.

Review Denied April 15, 1986.

Dix, Rehling & Waterman by J. Stephen Dix, Tucson, for plaintiffs/appellants.

Kimble, Gothreau, Nelson & Cannon, P.C. by Stephen Kimble, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Appellant Maake seeks a reversal of the summary judgment granted in favor of appellee, Ross Operating Valve Company (Ross), contending there are material issues of fact as to whether or not Ross had a duty to warn of dangers in its product. We reverse, finding there is a fact issue as to whether Ross had a duty to warn.

Wayne Maake was an employee of Elgin Metal Products near Elgin, Arizona. In early April 1982, his employer purchased a 30-ton power press from Arizona Steel Rule & Die Company which had purchased it at an auction a year previously. Arizona Steel Rule & Die sold the press to Maake's employer without making any changes in it, and Maake's employer made no changes. The press was more than 60 years old at the time Elgin Metal Products purchased it, and its prior history is unknown. No written instructions were given with the machine. An employee of Arizona Steel Rule & Die spent an hour showing Maake and his employer how to operate the press. When Arizona Steel Rule & Die purchased it, two palm buttons and a Handsaver pneumatic valve manufactured by appellee were installed on it which constituted the actuating system. No one knows who installed the buttons and valve or when they were installed. It is known that they were not original equipment on the press, since Ross did not manufacture the valve and palm buttons until 1964. The press had originally been actuated by means of a foot treadle.

On April 23, 1982, Maake was operating the press to punch out hinge parts from ten-foot lengths of sheet metal. After punching a number of pieces, his right hand was smashed as he was attempting to remove a hinge part from the area known as the point-of-operation. His hand was amputated later that day. Although Maake had not depressed the palm buttons to actuate the press, the ram mechanism made an additional power stroke. The press had not been known to do that during the previous year's use at Arizona Steel Rule & Die. No one has determined why the press made a repeat cycle.

The Handsaver valve and two palm buttons are, as an advertisement of Ross states, "designed *to force a machine operator to keep two hand valves depressed during a machine cycle* and thus keep his hands away from possible harm" (emphasis

in original). The bulletin indicates that the system makes it difficult for an operator to tamper with the circuit, since the valve does not operate if one of the palm buttons is permanently "tie[d] down". The advertisement also declares "[h]ere is the unit designed *to limit a machine to only one cycle for each actuation* of the control valve(s)" (emphasis in original). Among the advantages of the Handsaver valve over other valves in Ross' brochure is listed "provides both two-hand control and single cycle capabilities in one unit."

The deposition testimony and Ross' catalogs and advertising bulletins showed that the company manufactures a number of different types of pneumatic and some mechanically-operated valves. They are "a general purpose industrial valve product line," and the recommendations for their use come from purchasers' engineers who design circuits which utilize the valves in particular equipment. Power presses are one of the types of equipment on which the valves are installed, and Ross was aware of that fact. The testimony of Ross' mechanical engineer was that the valves can be used in so many different ways Ross cannot determine exactly how they are applied on any particular type of equipment. The products are sold to distributors who then own, handle and sell them as they wish. Since Ross itself does not install valves, no installation instructions are provided, although some "notes pertaining to installation" appear in the brochures. According to Ross' engineer, the literature primarily explains the functions of the valves and provides product specifications so the circuit designer can decide the best way to use the product.

The Handsaver valve is "one element of a control system" and is sold both with and without palm buttons. It can be used both with and without single-cycle (non-repeat) control. The non-repeat control requires additional components in the system and serves to prevent a machine from cycling more than once for each depression of the palm buttons. The company makes no recommendation as to single-cycle controls, although it does apparently recommend that the Handsaver be used with two-hand controls (the palm buttons). The press that smashed Maake's hand did not have a non-repeat control. The company's literature includes schematics and written explanations on two-hand control systems, single-cycle control systems, and systems with both features.

Maake's expert, a mechanical engineer, stated in his affidavit his opinion that Ross' valves were defective and unreasonably dangerous for use on a press such as the one in question because there was no warning to purchasers or users that it was absolutely essential to have non-repeat capability in the pneumatic system, because there was no warning that the valves would not prevent repeats due to failure in the mechanical clutch, because there was no warning that the valves could stick open unless the mechanical clutch also had single-stroke capability and because there was no warning that the user should never place his hand into the die area when the flywheel was turning and that he should use hand tools to place or remove parts in the die area. There is no dispute that Ross had not issued any warnings with the valve and palm buttons. The expert also stated that warnings should be extremely specific when air valves are placed on a full-revolution mechanical clutch because presses with such clutches are more prone to repeat than presses with partial revolution clutches.

Maake sued Ross and other defendants. He alleged three counts against Ross, one sounding in negligence, one in breach of warranty, and the third in strict liability. All are based on Ross' failure to warn of dangers in utilizing Ross' actuation system on a full-revolution mechanical clutch power press without an additional non-repeat system to prevent unexpected recycling of the machine. Ross moved for summary judgment, contending it had no duty to warn, and the trial court granted the motion. Appellant then moved for a new trial, and the motion was denied. This appeal is from that denial.

The issue here is whether the manufacturer of a component part has a duty to warn not only the purchaser and assembler, but also the ultimate user, of dangers in its products. The duty to warn is covered under the general rule of strict liability of § 402A of the Restatement (Second) of Torts (1965) under comment j. A product can be considered unreasonably dangerous under that section solely because no direction or warning is given as to its use. *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 667 P.2d 750 (App.1983); *Kavanaugh v. Kavanaugh*, 131 Ariz. 344, 641 P.2d 258 (App.1981). "The failure to warn comes into play in a strict liability case when the product is perfectly manufactured and meets every requirement for its designed utility but nevertheless is unreasonably dangerous because of a failure to warn of its dangerous characteristics." *Embry v. General Motors Corp.*, 115 Ariz. 433, 436, 565 P.2d 1294, 1297 (App.1977). A caveat to § 402A notes that the American Law Institute expressed no opinion on the applicability of the section to the seller of a component part of a product that is assembled.

Of the warnings Maake's expert contended should have been given, the two involving an operator's placing his hand in the die area and using hand tools to place or remove parts in the die area are not applicable to Ross. They relate only to the manufacturer of the press, not to the manufacturer of a component actuating system that may be used in a great number of other types of equipment as well as in power presses. Such a warning would be meaningless to the operator of any other type of equipment on which the control system was installed.

The other warnings Maake's expert contended should have been given are another matter, however.

"In reviewing the granting of a summary judgment, the evidence must be viewed in a light most favorable to the losing party, with that party being given the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, reasonable men could reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed." *Wisener v. State*, 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979).

Ross' own literature reflects its knowledge that the Handsaver valve and palm buttons are installed on power presses. Their use on the power press which injured Maake thus was not unforeseeable. Moreover, Ross' brochures state that the valve is designed to limit the machine on which it is installed to one cycle for each actuation. Although Maake actuated the machine only once, the press recycled and crushed his hand. Under these facts, we believe reasonable men could differ as to whether or not the valve and palm buttons are unreasonably dangerous without a warning as to the requirement of additional components to prevent recycling.

"The duty placed on the manufacturer is that it know or, through testing and other investigation, should know of the product's hazards. [Citations omitted.] It then has the duty to provide adequate warnings about those hazards to the foreseeable consumer." *Foremost-McKesson Corp. v. Allied Chemical Co.*, 140 Ariz. 108, 112, 680 P.2d 818, 822 (App.1983). Ross admitted that, despite the fact that it had known for nearly twenty years that its valves were used on power presses, it knew little about how they were actually designed and installed in power press circuits and knew little about power presses themselves. This was so even though its literature stated that its products would "help manufacturers, rebuilders, and *users* of mechanical power presses and similar equipment meet the pneumatic requirements of the Federal Occupational Safety and Health Act of 1970" (emphasis added).

We find that Maake produced sufficient evidence as to the existence of a duty to warn to warrant submission of the matter to a jury for determination. The motion

for new trial is reversed, and the case is remanded for trial.

BIRDSALL, P.J., and HOWARD, J., concur.