NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARY TRYON, *Plaintiff/Appellant,*

*v.*

UTAH SHELTER SYSTEMS INC, *Defendant/Appellee.*

No. 1 CA-CV 22-0502
FILED 5-11-2023

Appeal from the Superior Court in Maricopa County
No. CV2017-094749
The Honorable Stephen M. Hopkins, *Retired Judge*

**AFFIRMED**

COUNSEL

Robinson & Allen, P.L.C., Mesa
By Dale W. Robinson
*Counsel for Plaintiff/Appellant*

Frame Law PLLC, Phoenix
By Paul K., Frame, Kristy M. Frame
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Angela K. Paton joined.

---

**W I L L I A M S**, Judge:

¶1		Mary Tryon appeals the superior court's grant of summary judgment for Utah Shelter Systems, Inc. ("USS"). We affirm summary judgment for USS.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2		William Tryon, Mary's husband, purchased a steel hatch door and two corrugated steel tubes from USS. The Tryons initially intended to build a nuclear blast shelter using these and other materials purchased from third parties.

¶3		At some point, the Tryons instead decided to use one of the tubes as a storage container. In 2016, William had a steel door he purchased from a third party installed to seal one side of the tube, buried the tube horizontally on the Tryons' property, and filled it with food and supplies. Once buried, the container could only be accessed by ladder through another vertically placed tube that the Tryons had purchased from a third party.

¶4		On August 2, 2016, manure contaminated floodwaters flowed onto the Tryons' property and into the access tube that was open to the surface. Water then flowed down into the storage container. William placed a pump in the access tube six days later to remove the water from the storage container. William entered the access tube later that day, was overcome by a lack of oxygen and carbon dioxide buildup, and died.

¶5		Mary Tryon sued USS, the City of Phoenix, and Cox Cactus Farm, L.L.C. for wrongful death. As relevant to this appeal, Mary alleged USS "failed to provide proper ventilation and/or adequate warning to purchasers of its underground shelters, of the inherent and significant danger of enclosed storage containers to cause serious injury or death because of potential oxygen depletion and/or the accumulation of poisonous gas in the enclosed space."

¶6            USS moved for summary judgment, contending the tube was not unreasonably dangerous when sold and "did not present hidden dangers not contemplated by the ordinary user." USS also contended the risk of oxygen depletion was obvious and known.

¶7            The superior court granted USS's motion concluding it owed no duty to warn because "the risk of this confined space is obvious to 'every adult'" and because William "by virtue of attempting to design and build his own shelter was presumably more aware of the danger (i.e., the need for outside ventilation)." It also determined USS was a "component or 'remote' supplier." Quoting a treatise that relied on Restatement (Third) of Torts: Products Liability § 5 (1998), the court concluded that a "supplier of raw materials or component parts normally has no duty to warn end users of risks arising out of the incorporation of the component into a larger, finished product."

¶8            Mary moved for reconsideration and a new trial. Both were denied. She then settled her claims against the City of Phoenix and Cox Cactus Farm, L.L.C. Mary timely appealed the court's final judgment. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶9            Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in a light most favorable to Mary as the non-moving party. *Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022).

¶10           "[B]oth negligence and strict liability standards impose a duty to produce products with appropriate warning instructions . . . ." *Dole Food Co. v. N.C. Foam Indus., Inc.*, 188 Ariz. 298, 301 (App. 1996) (citation omitted); *see also* A.R.S. § 12-681(5) (defining "products liability action" to include "any action brought against a manufacturer or seller of a product for damages for . . . the failure to warn or protect against a danger or hazard in the use or misuse of the product"). The duty to warn arises if a product, even if perfectly manufactured, is unreasonably dangerous without appropriate warnings of its dangerous characteristics. *Wilson v. U.S. Elevator Corp.*, 193 Ariz. 251, 254 (App. 1998). It requires manufacturers and sellers to "warn consumers of foreseeable risks of harm from using their products." *See Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 24, ¶ 13 (2016)

(citing Restatement (Third) of Torts: Prod. Liab. § 2 (1998)). The duty therefore only extends to dangers the manufacturer or seller knew or should have known when the product was distributed or sold. *Powers v. Taser Int'l., Inc.*, 217 Ariz. 398, 404-05, ¶¶ 25-26 (App. 2007).

**¶11**         Mary contends USS owed a duty to warn because it knew the tube "was designed to be buried underground and to be sealed up to become a confined space." But she offered no evidence to suggest the tubes were designed to be used as underground storage containers. And while she cites out-of-state caselaw to contend that a manufacturer or seller owes a duty to warn if it "know[s] how products are going to be used and the danger of those potential uses," she presented no evidence to show USS knew or reasonably should have known that the Tryons would, years after their purchase, convert one of the tubes into an underground storage container. *See* Restatement (Third) of Torts: Prod. Liab. § 2, cmt. m (1998) ("[I]n connection with a claim of inadequate . . . warning, plaintiff should bear the burden of establishing that the risk in question was known or should have been known to the relevant manufacturing community."). The record instead shows the Tryons sent USS a sketch five months after they purchased the tubes depicting them as parts of a complex nuclear blast shelter. Roughly five years later, USS sent the Tryons a packet of shelter installation "suggestions" and asked if the shelter depicted in the 2010 sketch was "still [their] intention." There is no response in the record.

**¶12**         Mary also cites *Maake v. Ross Operating Valve Co.*, 149 Ariz. 244 (App. 1985), for the proposition that component part manufacturers can owe end consumers a duty to warn. There, the plaintiff suffered injury when the power press he was operating made an unexpected additional power stroke. *Maake*, 149 Ariz. at 245. The machine's actuating system consisted of two palm buttons and a "Handsaver" pneumatic valve that Ross Operating Valve Company manufactured but did not install. *Id.* at 245-46.

**¶13**         We determined a reasonable jury could have found Ross's buttons and valve were unreasonably dangerous absent "a warning as to the requirement of additional components" needed to prevent unexpected power strokes. *Id.* at 247. But *Maake* differs from the present case because there was ample evidence showing Ross knew the Handsaver valve and palm buttons were installed on power presses, making their use on those machines foreseeable. *Id*. Ross also admitted it "knew little about how [its valves and buttons] were used on power presses" despite knowing for nearly twenty years that they were used in that manner. *Id.* Here, in contrast, there is no evidence to suggest USS knew of the Tryons'

underground storage plans until after the accident occurred, nor is there any evidence to suggest others have installed USS tubes in a comparable manner.

¶14        Mary also cites deposition testimony from USS personnel suggesting they knew confined spaces can be dangerous. But Mary's expert witness, Dr. Paul Rosenfeld, conceded the tube "was not a confined space at the time of sale." The tube only became a confined space when William had one end sealed years later. There is no record evidence to suggest USS knew or reasonably should have known the Tryons would install the tube in this manner. *See* Restatement (Third) of Torts: Prod. Liab. § 2, cmt. m (1998) ("Product sellers and distributors are not required to foresee and take precautions against every conceivable mode of use and abuse to which their products might be put."); *see also Powers*, 217 Ariz. at 405, ¶ 25 (citing cmt. m). In any event, the purchase invoice for the tubes included the following statement:

> Do not place these shelters into the water table or in a locations [sic] where water can accumulate.

Mary disputed that this statement constituted a "warning," but Dr. Rosenfeld stated that it was. USS presented an undisputed expert affidavit that the Tryons installed the tube in an area where water could, and did, accumulate.

¶15        Mary also cites Dr. Rosenfeld's opinion that USS should have communicated "requirements for air monitoring . . . and forced ventilation" and advised the Tryons to "install a ventilation system and an air monitoring device before entering the [storage container]." USS contends that Dr. Rosenfeld is not qualified to opine as to what warnings USS should have provided. But we need not reach that issue here.

¶16        The record indicates the Tryons had purchased a ventilator from a third party but had not installed it. USS also offered undisputed testimony that the ventilator would not have worked in this case because the storage container was "filled to the ceiling with debris and water." Mary thus did not show that the lack of ventilation warnings caused or contributed to the accident. *See Raschke v. Carrier Corp.*, 146 Ariz. 9, 12 (App. 1985) (affirming summary judgment for the defendant because "the failure to warn was not the proximate cause of the accident").

**CONCLUSION**

**¶17** We affirm summary judgment for USS. We do not reach the superior court's determination that any dangers presented by the storage container were open and obvious. USS may recover its taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA